[Cıv. No. 6632. Third Dist. Mar. 19, 1942.]

MARIE C. FIELD, as Administratrix, etc., Appellant, v. WALTER D. MOLLISON, Respondent.

T. C. Van Ness, Jr., Everett C. McKeage, and Abraham Setzer for Appellant.

Raymond Haizlip for Respondent.

HELD, J. pro tem.—On April 21, 1925, certificate No. A754, for 40 shares of the capital stock of Fireman's Fund Insurance Company was issued to Marie C. Dorfler, and on April 17, 1929, certificate No. B15333, for 20 shares, was also issued to her. The ownership of these certificates, and the stock thereby represented, with accrued dividends, is here involved. Marie C. Dorfler died on January 2, 1935, and after due proceedings had, appellant was appointed administratrix of her estate, and has brought this action to recover, on behalf of the estate, the possession of the certificates, and to quiet title thereto. The defendants Gertrude Mollison and Fireman's Fund Insurance Company, by their respective answers, disclaimed any interest in the property involved herein. Defendant Walter D. Mollison filed an answer, denying title in the estate, and claimed ownership by virtue of an alleged gift to him by Marie C. Dorfler. The trial court rendered judgment in favor of the defendant Walter D. Mollison, and plaintiff administratrix appeals.

It is the claim of appellant that the findings are entirely unsupported by credible or substantial evidence. This renders it necessary to consider the evidence in detail. Marie C. Dorfler had, among other children, two daughters, Marie C. Field and Gertrude Mollison. Each of these had one child. Gertrude Schwab is the daughter of Marie C. Field, and respondent Walter D. Mollison is the son of Gertrude Mollison. Mrs. Dorfler, who, at the time of her death, was 78 years of age, made her home, sometimes with one of her daughters, and sometimes with the other, and, on occasions, also visited with her granddaugher, Mrs. Schwab, who resided in Los Angeles. The respondent was born on January 8, 1911, and lived with his parents in San Francisco. The home of Mrs. Field was in Oakland.

Respondent, Walter D. Mollison, testified that in the latter part of 1932, at his parent's home, and while his grandmother temporarily resided there, she handed him an envelope and told him to look inside and see what he would find; that he accepted the envelope, and examined its contents, and found it to contain the two stock certificates here involved, and an assignment of each, separate from the certificates; that when he expressed his gratitude and appreciation, his grandmother told him she wanted him to have the stock, and thought it best to give it to him then, but admonished him to mention the circumstances to no one; that he

placed the envelope, with its contents, in a cash-box in a closet in his home, where it remained until the month of January, 1933, at which time he rented a safe deposit box at the home office of the Bank of America in San Francisco, and placed the documents therein, in a sealed envelope; that they remained there until he removed them on the day following the death of Mrs. Dorfler; that at the time of the gift, his grandmother was mentally sound; that he told neither of his parents, nor anyone else, of the gift, nor was the matter ever subsequently discussed between his grandmother and himself. No transfer of ownership of the stock was made on the corporate books, and all dividends were mailed to, and received by Mrs. Dorfler, until shortly prior to her death.

On the trial, the stock certificates and separate assignments were produced from the possession of respondent, and offered and admitted in evidence. Each certificate was the original issued to Marie C. Dorfler, and bore on the reverse side a blank form of assignment, which purported to be signed by Marie C. Dorfler in the presence of Gertrude Schwab, and the signature guaranteed by an official of the Bank of America National Trust & Savings Association. The assignments separate from the certificates, each purported to be signed, witnessed and guaranteed in the same manner as the endorsements on the certificate. Instead, however, of being in blank, there appeared in each separate assignment, the name of Walter D. Mollison as assignee, and the number of the certificate assigned. These assignments were dated as of September 17, 1931.

Respondent produced as witnesses his mother, Gertrude Mollison, and his father, Walter P. Mollison. The former testified to a conversation with her mother during the month of January, 1934. At that time, Mrs. Dorfler's mailing address was the home of Mrs. Field, in Oakland, and she expressed concern that her dividend checks, which were mailed to her at that address, might go astray during Mrs. Field's absence from her home. The witness sought to reassure her mother, whereupon the latter said, "Well, I have not got the stock, anyway; it does not belong to me." The witness asked, "What did you do with it, did you sell it?" Her mother laughed and replied, "No; some day you will know. You will find out."

Respondent's father, Walter P. Mollison, related an in-

cident which occurred in June, 1934, while the witness was driving Mrs. Dorfler from San Francisco to the home of her daughter, Mrs. Field, in Oakland. During the trip, Mrs. Dorfler burst into tears, and when asked the cause, said she dreaded going across the bay, presumably to the Field home, because, "All I hear over there is 'stocks, stocks, stocks', and I get sick of it; what a surprise they will get when they find out."

The foregoing, we think, is a fair résumé of the case made out by respondent. In rebuttal, Mrs. Schwab testified that while en route to the undertaking establishment to arrange for the funeral of Mrs. Dorfler, respondent stated to the witness and others then present in an automobile, that his grandmother had given him an envelope for safekeeping, with the request that he open it when she passed away, and that he would be surprised, and that he did so open it, and that he was surprised. In this, the witness was corroborated by her mother, Mrs. Field. Respondent's version of this incident was that on the journey referred to, Mrs. Field stated to others, in his presence, that Mrs. Dorfler had given respondent the stock, and that it was nice that he had it. He denied making any statement indicating his ignorance of the contents of the envelope.

Mrs. Field also testified that on the evening following the death of Mrs. Dorfler, she and Mrs. Mollison made a search for the stock certificates among the effects of Mrs. Dorfler, in the Field home in Oakland, but without success; that Mrs. Mollison then left for her home in San Francisco; that before she left, she arranged for a meeting with her sister at the office of the American Trust Company, in San Francisco, on the following day, for the purpose of withdrawing, and dividing between them, a bank deposit of approximately $12,000, which stood in the name of Mrs. Dorfler and Mrs. Mollison as joint tenants; that it was understood between them that when Mrs. Mollison reached her home she should make search among Mrs. Dorfler's effects there, for the stock certificates, and report the result of her search to her sister by telephone. It is conceded that a conversation by telephone was had between Mrs. Mollison and her sister, shortly after the former arrived at her home, but the parties differ as to the purport thereof. Mrs. Field testified that her sister said, "The stock is found." Mrs. Mollison denied this. She testified that on her return to her home she referred, in the pres-

ence of respondent, to the search for the stock certificates which had been made among the effects of Mrs. Dorfler in the Field home; that respondent then, for the first time, told her that his grandmother had given him the envelope. However, he still did not reveal to her the nature of its contents, but requested that she tell her sister that he had an envelope which he desired to exhibit to his mother and aunt at the meeting which they had arranged for the following day. Thereupon, Mrs. Mollison telephoned to her sister. She denied, however, that she said anything about the certificates having been found, and claims that she did not herself then know that the certificates were in the envelope referred to by her son.

There is also some difference between the witnesses as to the conversation had on the following day, when the parties met at the office of the American Trust Company. It is the testimony of Mrs. Field that on that occasion respondent produced an envelope which he showed to her, and that he then said, "Well, grandma left me the stock. She gave me the envelope to take care of, and she said whenever she passed away, and I opened it, I would be surprised, and I was surprised." Respondent, on the other hand, testified that when he met his mother and aunt at the Trust Company's office, he produced the envelope which he had that morning withdrawn from his safe deposit box, and handed it to Mrs. Field, unopened; that he said to her and his mother, "That this was an envelope that I wanted them to see, or I wanted them to see it together"; that Mrs. Field "then opened the envelope and looked at its contents, and congratulated me on having the stock; said it was nice that I had it, that 'Gram' had always thought a lot of me, and so it was nice that I had it."

In addition to the foregoing statements attributed to respondent by Mrs. Field and Mrs. Schwab, these two, and the latter's husband, testified to several occasions on which Mrs. Dorfler had expressed to them a desire, and an intention, to divide the shares of stock equally between Mrs. Field and Mrs. Mollison. Mrs. Schwab also detailed the circumstances under which the stock certificates and separate assignments were executed. Her testimony was that in the month of March, 1931, at her mother's home in Oakland, Mrs. Dorfler spoke concerning the disposition she desired to make of the stock in the event of her death, and that upon that occasion

she stated that "she wanted to fix it so that in case anything happened to her, she wanted it equally divided between my mother, Mrs. Field, and Mrs. Mollison." The witness advised her that to accomplish this, it would be necessary that she sign the assignments on the reverse of each certificate, and also the assignments separate from the certificates, and to have the signatures guaranteed by an officer of a banking institution. Mrs. Dorfler thereupon signed her name, in the presence of the witness, to each of the four assignments, and requested Mrs. Schwab to arrange for the necessary guarantee of the signatures. Thereafter, Mrs. Schwab presented the certificates and assignments to an official of the Bank of America in Oakland, and was told by him that it would be necessary that she add her signature as a witness to that of Mrs. Dorfler; that she thereupon signed her name as a witness on each instrument, and the guarantees were thereupon placed on each instrument by the bank official. Mrs. Schwab testified, also, that at the time of the execution of the assignments, and the return of the documents to Mrs. Dorfler, all the assignments were in blank, and that neither the date, nor the name of respondent, appeared on any.

Appellant stresses greatly the fact that on the trial in the court below, respondent fixed the time of the gift as in the latter part of 1932, while in the answer, verified by him, it is alleged to have been made on September 17, 1931, and in a deposition of respondent, taken before trial, he fixed the time as the middle of 1932. These discrepancies as to date, and the inability of respondent to recall certain of the details surrounding the gift, such as the color of the envelope in which the documents were contained at the time he received them from his grandmother, the room in which, and the hour of the day when the transaction took place, appellant contends, discredits the testimony of respondent to such an extent that it should have been wholly disregarded and rejected by the trial court.

The essentials of a valid gift *inter vivos* are set forth in 13 Cal. Jur., at page 32, as follows: (1) Competency of the donor to contract; (2) a voluntary intent on the part of the donor to make the gift; (3) delivery, either actual or symbolical, amounting to transfer of title; (4) acceptance, actual or imputed; (5) complete divestment of all control by the donor; and (6) a lack of consideration in return for the gift. (*Lefrooth* v. *Prentice,* 202 Cal. 215 [259 Pac. 947]; *Lynch* v.

*Lynch,* 124 Cal. App. 454 [12 Pac. (2d) 741].) Respondent has established all these, and we cannot say that his testimony is of such a character that it should have been rejected by the trial court. [3] Transfer on the books of the corporation is not required to effect a valid gift. (*Delannoy* v. *Quetu,* 73 Cal. App. 627 [239 Pac. 71].)

 While the testimony of the donee of a gift should be viewed with caution, and even with suspicion, to prevent fraud, there is no presumption that such testimony is false. To the trial court is committed the determination of the credibility of the witnesses and the weight of the evidence, and that tribunal must be assumed to have been guided by the appropriate rules of law in determining questions of fact. (*Eckstrom* v. *Brooks,* 115 Cal. App. 727 [2 Pac. (2d) 207]; *Burrows* v. *Burrows,* 18 Cal. App. (2d) 275 [63 Pac. (2d) 1135].) This court must accept as true all evidence tending to establish the correctness of the findings, and must consider such evidence in the most favorable aspect toward the prevailing party. (2 Cal. Jur., 880.) And, if there be substantial evidence to support the conclusion of the trial court, that conclusion is final. (13 Cal. Jur. 47; *Steinberger* v. *Young,* 175 Cal. 81 [165 Pac. 432]; *Estate of Filippi,* 9 Cal. App. (2d) 407 [49 Pac. (2d) 892]; *Brown* v. *Canadian, etc. Co.,* 209 Cal. 596 [289 Pac. 613]; *Clark* v. *Abrams,* 49 Cal. App. (2d) 497 [121 Pac. (2d) 750]; *Kennington* v. *Neff,* 49 Cal. App. (2d) 692 [122 Pac. (2d) 58].) In *Bright* v. *Zabler,* 43 Cal. App. (2d) 706 [111 Pac. (2d) 387], the court said: ''If there is competent evidence to support the findings of fact in question, disregarding all conflicts and considering the evidence most favorable to plaintiff, then they must be sustained.''

Here, there is competent evidence to support the finding that Marie C. Dorfler made a valid gift of the stock in question to the respondent, and that finding we are not at liberty to disturb. It follows, therefore, that the judgment appealed from must be affirmed, and it is so ordered.

Thompson, Acting P. J., and Tuttle, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 14, 1942.