272 P.2d 159

**PREAS v. PHEBUS et al.**

No. 8104.

Supreme Court of Utah.

June 18, 1954.

4. Rule 25(a) (1) Federal Rules Civ.Proc. 28 U.S.C.A.

Skeen, Thurman, Worsley & Snow, Salt Lake City, for appellant.

Gustin, Richards & Mattsson, Salt Lake City, Oliver W. Steadman, Cody, Wyo., for respondents.

McDONOUGH, Chief Justice.

On October 11, 1930, W. N. Preas, appellant and plaintiff below, along with several others, as owners of oil and gas royalty interests in and to 440 acres of land located on the Ashley Valley Structure, Uintah County, Utah, executed an agreement (hereafter referred to as Exhibit "C") with Paul Stock and Ray Phebus, respondents and defendants below, assigning to the defendants one-third of the assignors' outstanding oil royalty interests. Since this assignment constitutes the focal point of our inquiry, it is set forth in entirety, as follows:

"Assignment Royalty Interest

"This agreement and assignment made this 11th day of October 1930 between the undersigned owners, parties of the first part, and Paul Stock of Cody, Wyoming and Ray Phebus of Thermopolis, Wyoming, parties of the second part,

"Witnesseth

"Whereas the parties of the first part are the owners of certain royalties in the gas now being produced and that may hereafter be produced from the following described lands situated in the County of Uintah, State of Utah, to-wit:

[Legal description of lands involved is here set out.]

"and whereas said parties of the first part are also the owners of certain royalties in the oil which may hereinafter be produced and saved from said land; and whereas the parties of the second part are the owners of certain Interests in the Oil and Gas that may be produced from said land and are desirous of negotiating with a responsible oil production Company for the drilling of a deep test well on said ground, but cannot perfect said negotiations due to the fact that there are now outstanding royalties of eighteen and one-half (18½) percent which it is desirable to reduce to a total Royalty of twelve and one half (12½) percent; and whereas such drilling well not only test such land for oil, but offers the possibility of further developing the gas production from said land to the benefit of the holders of said gas royalties.

"Now therefore: in consideration of the premises *of procuring the drilling of a deep test well on said land,* for the consideration of One Dollar ($1.00) and other valuable considerations the undersigned parties of the first part, being the owners of the respective royalties as hereinafter set opposite their respective signatures, *do hereby sell, assign and set over unto the parties of the second part One third ⅓* of their respective royalty interest in the oil produced and saved from said land.

"It is expressly understood and agreed That this assignment does not apply to the

royalty interests of said parties of the first part in gas produced from said land. *This assignment is made for the purpose of procuring the drilling of a well* to test the said land for oil under the agreement between the said Paul Stock and Ray Phebus on the one part and the Standard Oil Company of California and/or one of its subsidiaries, on the other part, hereinafter designated as the operating Company. *If the negotiations* of the said Paul Stock and Ray Phebus *shall result in the drilling, within the time limitations hereinafter provided of a test well upon the Ashley Valley Structure* to the depth of the Pennsylvanian formation or to such lesser depth as shall produce oil in commercial quantities, *then this assignment shall be. at* [sic] *full force and effect* as to the oil royalties hereinafter set forth. It is understood that the *limitations above referred to are as follows,* the said operation company is to *commence said well* on the Ashley Valley structure *within six months after the completion of the deep test well which shall first be drilled on the Rangley structure* in Northwestern Colorado, said well on the Rangley structure shall be commenced as soon hereafter as weather conditions will permit and not later than the summer of 1931, after the commencement if [sic] each of the said wells, the drilling operations shall be presented [sic] with reasonable diligence. *If said well upon the Ashley Valley structure shall not be drilled as herein contemplated, then in that event the parties of the second part hereby agree to reconvey the royalty interests herein assigned to them to the respective parties of the first part.* In Witness whereof we have hereunto set our hands and set opposite our respective names the percentage of royalty interest affected by this agreement and have caused this *assignment of One third* ⅓ thereof to be executed.

| Name | Royalty |
| --- | --- |
| Lusius A. Dick | ½% |
| James Wash Sheridan | 1% |
| J. N. Wyman | ½% |
| Ida H. Sheridan | ½% |
| Francis Hamilton Sheridan | 1% |
| Mayme Wyman | |
| *N. J. Meagher* | |
| *W. N. Preas* | |
| parties of the first part; | |
| Ray Phebus | |
| Paul Stock | |
| *Parties of the second part."* | |

(Italics added.)

█ It is plain that the provisions in the agreement for revesting of the interests in the assignors were inserted in the interest of and for the benefit of the plaintiff and other assignors, whose purpose it was to have the lands developed for oil and gas.

While the Standard Oil Company of California did complete the test well on the Rangley Structure, neither the Standard Oil Company of California nor any of its subsidiaries, within six months after the Rangley test was completed, commenced drilling upon the 440 acres of land described in Exhibit C. Failing to complete the well as agreed upon, the plaintiff had an un-

doubted right to force a reconveyance of the royalty interest. However, plaintiff did not avail himself of this right and after mesne conveyances of the overriding royalties and other interests, on December 30, 1948, defendants Paul Stock, Joe T. Juhan, Weber Oil Company and Equity Oil Company, as owners of various interests in the 440 acres of land described in Exhibit C, including the one-third royalty interest assigned by plaintiff, entered into an operating agreement. On September 18, 1948, a producing well was completed on the 440 acres referred to in Exhibit C.

On November 17, 1948, the Equity Oil Company issued an initial royalty check to plaintiff based upon two-thirds of the one per cent overriding royalty interest held by him, and each month thereafter defendant Equity Oil Company continued to forward such checks, none of which were cashed; all of which carried the following endorsement:

"Payment in full oil produced and sold during October 1948 Ashley Valley No. 1 well under Modification Agreement dated May 21, 1927; royalty interest 1% from M. P. Smith February 3, 1925, *less assignment of ⅓ of 1% to Paul Stock and Ray Phebus October 11, 1930;* and the payee, by endorsement of check attached, represents that he is the holder and owner of the royalty interest in the amount stated." (Italics added.)

The issue in this case involves only one-third of the one per cent overriding royalty interest transferred by plaintiff under the terms of Exhibit C. The original complaint was in substance a typical quiet title action; and amended complaint retained the original theory and added thereto alternative prayers that certain conveyances of record be declared void and defendants be compelled to convey the one-third of one per cent royalty interest to plaintiff, or that a constructive trust of the one-third interest be declared in favor of plaintiff, and finally for an accounting.

The lower court held that after failure of defendants Phebus and Stock to procure the drilling of a well on the Ashley Valley Structure within the limitations set forth in Exhibit C, the plaintiff was entitled to a conveyance of the interest assigned by Exhibit C, but that the plaintiff did not prosecute his cause of action within six years from the date of accrual thereof (six months after the completion of the test well on the Rangley structure), and hence, the action is barred by Utah Code Annotated 1953, 78–12–23(2).

Plaintiff contends that notwithstanding the fact that this action was not commenced until May 16, 1950, more than a year and one-half after discovery of oil on the premises, and more than sixteen years after completion of the test well on the Rangley Structure, the assignment (Exhibit C) between plaintiff and defendants Phebus and Stock, from which the one-third of one

234

per cent royalty interest arose, terminated by its own terms in January, 1934, and plaintiff was automatically re-vested with the one-third interest.

In other words, the parties differ as to whether the language used in Exhibit C establishes an estate upon condition subsequent or an estate subject to a conditional limitation. The distinction is that in the case of a condition subsequent the assignor is given the right "to secure a revesting of the former estate, so that, if no steps are taken to secure a revesting, the estate granted remains as before, while the happening of the event described by a conditional limitation ipso facto determines the estate." 51 A.L.R. 1473. It is, of course, a subtle distinction, and no absolute rule of construction can be established; each document must be construed according to the particular language used. However, when the provision for reverter is for the benefit of the grantor or assignor, and he not only has a right to terminate the assignee's interest, but at the same time he might refrain from the exercise of the right, it is generally held that the interest continues until the assignor does some act to avoid the interest. The rule is stated in 52 L.R.A.,N.S., 722, as follows:

"And in oil and gas leases, provisions that work must be commenced or carried on to a certain point by a certain date have been subjected to this rule. It has been held that such provisions are for the benefit of the lessor, and that default by the lessee does not render the lease absolutely void * * *, but does render the lease voidable at the option of the lessor, even though the lease provides that upon default of the lessee the lease shall be 'null and void' or that all rights and obligations thereunder shall 'cease and determine,' etc. See note to Evans v. Consumers' Gas Trust Co. 31 L.R.A. 673."

A fair and just construction of Exhibit C requires that all provisions be construed together and with reference to each other. Thus construed, we think the language makes it optional with the plaintiff whether to avail himself of a right to effect a reconveyance in the event of a breach. The parties did not intend that a breach of the conditions ipso facto terminate the assignment, but rather the following language shows that it was their intention to create an estate upon condition subsequent: "If said well upon the Ashley Valley structure shall not be drilled as herein contemplated, then in that event the parties of the second part hereby agree to reconvey the royalty interests herein assigned to them to the respective parties of the first part." We must abide by the expressed intention of the parties, and the words "hereby agree to reconvey" positively show that an affirmative act was contemplated—not an ipso facto termination.

Since the plaintiff made no attempt to avail himself of this right for many

years, during which time a producing well was discovered on the property and large sums of money were expended by defendants in developing the structure, the plaintiff cannot now enforce a breach which has been waived and indeed barred by the Statute of Limitations. 1 Tiffany, The Law of Real Property (3rd ed.) pp. 336–348; 31 L.R.A. 673; Westmoreland, Etc., Natural Gas Co. v. DeWitt, 130 Pa. 235, 18 A. 724, 5 L.R.A. 731; Deming Investment Co. v. Lanham, 36 Okl. 773, 130 P. 260, 44 L.R.A.,N.S., 50.

Plaintiff next contends that this action is fundamentally one to quiet title; that a cause of action will not arise until there is knowledge of a hostile claim; and that plaintiff was not aware of defendants' claim until he first saw the endorsement on the royalty check received from Equity Oil Company in November, 1948. We do not agree. Plaintiff was fully aware of the failure of defendants to adhere to the conditions set forth in Exhibit C, and he failed to exercise his option to effect a reconveyance. He was aware of the material facts; he simply misconstrued the law by assuming that the assignment would automatically terminate. Whether we construe his failure to act as a waiver of his rights or state that his rights are barred by the Statute of Limitations, we reach the same point expressed by this court in Meagher v. Uintah Gas Co., Utah, 255 P.2d 989, 994. The same instrument (Exhibit C) was involved in the Meagher case, and we said, although by obiter dictum, that the rights of Meagher as an assignor under Exhibit C to effect a reconveyance of his one-third overriding royalty interest would not be favorably determined by this court. The comment by Justice Henriod concerning the problems presented by the present case is as follows:

" * * * Many questions may be posed as to intervening rights, right to specific performance or damages in a quiet title action, the matter of limitation of actions, rights of bona fide purchasers, estoppel, laches, etc., none of which we decide, but some of which well might vitally interest persons not joined. Should we decide any of these, we would look somewhat askance at, and with much less sympathy toward Meagher's claim of laches by Stock, then we would Stock's claim of laches by Meagher, after 20 years silence and an apparent indifference toward the ⅔ of 1% oil royalty that now looms large with discovery of oil."

The judgment is affirmed. Costs to respondents.

CROCKETT, HENRIOD, and WADE, JJ., and PARLEY E. NORSETH, District Judge, concur.

WOLFE, C. J., being disqualified, did not participate in the hearing of this cause.