466 P.2d 831

G. Grant SIMS, Executor of the Estate of George A. Sims, Deceased, Plaintiff and Appellant,

v.

Mitchell M. GEORGE et al., Defendant and Respondent.

No. 11693.

Supreme Court of Utah.

March 20, 1970.

---

Cannon, Greene, Nebeker & Horsley, Paul B. Cannon, Salt Lake City, for plaintiff and appellant.

George K. Fadel, Bountiful, for defendant and respondent.

CROCKETT, Chief Justice.

G. Grant Sims, as executor of the estate of his father, George A. Sims, seeks to recover about $45,000 worth of corporate stocks which the defendant, Mitchell George, claims were given to him by the father prior to his death. In support of his contention that there was no valid gift the plaintiff charges that his father, George A. Sims, was incompetent at the time he delivered the stocks to the defendant; and that they were obtained by fraud, duress, and undue influence practiced upon him. A jury found the issues for the defendant. Upon this appeal plaintiff argues that the jury failed to give proper weight and consideration to the evidence and to the court's instructions as to the requirements necessary to make out a valid gift; and particularly, the requirement as to the mental capacity of the donor.

**104**

Pursuant to the traditional rule of review, we survey the evidence in the light favorable to the jury's findings.[1]

George A. Sims died at Salt Lake City in 1967 at the age of 86. During his entire lifetime he had been involved as a managing officer of the Salt Lake Transfer Company, a family enterprise which had been founded by his father. In the early 1960's there had been extended litigation in which members of the family sued the company and obtained a judgment in excess of $255,000 in February of 1963.[2] At that time George A. Sims had a one-fifth interest in the company, which was optioned to his son, plaintiff Grant Sims. All of the decedent's assets totaled around a third of a million dollars. The stocks in question as a gift to the defendant were worth about $30,000 when delivered to defendant Mitchell George in September, 1963.

Defendant's father had owned and operated a confectionery store next door to the Transfer Company. George A. Sims was in there most every day and was friendly with the George family. He took a special interest in Mitchell George from the time he was a little boy, often taking him along for the ride on trips in connection with the business. The friendship continued and matured as Mitchell George took over the management of the store for his mother after the death of his father. There is evidence that they were good friends both business and socially, and that Mitchell George reciprocated the friendship of Mr. Sims in numerous ways: giving of a blood transfusion to Mr. Sims' first wife; helping with funeral arrangements for members of the family; was a guest in the Sims home on occasions such as wedding, birthdays, Christmas, Thanksgiving and family gatherings. The evidence also indicates that in appreciation of this friendship and companionship George Sims in the year 1961 had offered the defendant stock in the Utah Power & Light Company which was then worth over $100,000; but that the then Mrs. Sims (a second and late marriage) had made a remark from which Mitchell George apprehended that his acceptance of the proffered gift might cause friction in the family, and so stating, refused the gift.

Two years later, September 13, 1963, George Sims came into the defendant's store and wanted to talk to him privately. They went out to Mr. Sims' car where he explained to Mitchell George that he was in the process of arranging disposition of his property by his will, and that he wanted Mitchell George to have the shares of stock here in question. He endorsed them and delivered them to the defendant, together

1. Larson v. Evans, 12 Utah 2d 245, 364 P.2d 1088.

2. Bullough v. Sims, 16 Utah 2d 304, 400 P.2d 20.

with a note, which upon disputed evidence was found to be in the handwriting of George A. Sims, stating:

> In appreciation of the friendship and assistance of Mitchell George the past many years, I have given the following shares to be transferred his request.
>
> September 13, 1963
>
> George A. Sims (signature)

Following this was a typewritten list of the stocks delivered to the defendant.

Defendant took the stock certificates and placed them in the pocket of a raincoat at his place of business. But he did not have them transferred into his name until he was advised to do so after learning that there had been appointed a guardian for George Sims in April of 1965. It is also true that the defendant never claimed the dividends from the stocks because he said that he wanted Mr. Sims to have them during his lifetime.

Against the foregoing factual background we turn our attention to the controlling issue in this case: whether there was a valid gift of the stocks in question to the defendant Mitchell George.

 We are quite in accord with the proposition of law advocated by the plain-tiff: that the initial burden as to the prima facie proof of a gift, and also the burden of ultimate persuasion in the case, rests upon the defendant, as the claiming donee.[3] We further agree with the general rule that one so claiming a gift from another must so demonstrate by clear and convincing evidence;[4] and this is especially so when the claimed donor is deceased.[5] However, in this case there is a preliminary issue, with respect to which the burden of proof is reversed, and rests upon the plaintiff here. It relates to the competency of the plaintiff's father, George A. Sims. This is so because there is a presumption of competency; and the burden of proving incompetency is upon the one who asserts it.[6]

 It is to be acknowledged that there is testimony which may well be regarded as casting some doubt upon the competency of George A. Sims; and that this finds corroboration in the fact that about a year and a half after the delivery of the stock certificates to the defendant, a guardian was appointed for him on the ground that he could no longer properly manage his affairs. However, in opposition to those facts there is also competent credible evidence from disinterested witnesses to the contrary: that George A. Sims had always

3. Jones v. Cook, 118 Utah 652, 223 P.2d 423.
4. Lovett v. Continental Bank & Trust Co., 4 Utah 2d 76, 286 P.2d 1065.
5. See Hotchkiss v. Ogle, 153 Kan. 156, 109 P.2d 134; 38 C.J.S. Gifts p. 857, and cases there cited n. 75.
6. In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682; In re Richard's Estate, 5 Utah 2d 106, 297 P.2d 542.

been an intelligent and shrewd businessman; that during the years 1963 and 1964, after the time the gift was made, he still possessed those qualities. This includes affirmation of those facts in the testimony of his stockbroker, Walter L. Roche, concerning rational discussions about stock transactions; and the testimony of Dr. Krehl Smith, relating to conversations about the latter's desire to purchase the Sims home. It is our opinion that there is ample credible evidence to complement the presumption of competency and thus to provide a substantial basis for the finding that George A. Sims was competent when he made the gift to the defendant.

Proceeding upon the premise that the evidence justifies the finding that George Sims was competent, a brief recapitulation of the evidence as it relates to the other issue demonstrates clearly that what was done and said between the parties justifies the conclusion that there was a valid gift. The endorsement and delivery of the stock certificates to the defendant, together with the note expressing donative intent are sufficient to establish the completed gift and its acceptance;[7] and this is not necessarily negated by the fact that the defendant did not transfer the stocks[8]

or take the dividends.[9] The certificates were given into his possession and he did accept and retain them, rather than to refuse them as he had the previous proffer. After they were given to him he was free to do with them as he chose.

The jury's finding of a valid gift may also have been considered by them as being more reasonable if they believed, as the evidence provides a basis for believing, that there were reasons best known to George A. Sims himself why because of the long-time special friendship he wanted to have the privilege of giving part of his property to the defendant instead of keeping it all until his death. On the basis of the whole evidence we see no reason to disagree with the conclusion: that it was clear and convincing that such was his intention and desire, which he carried out by making a valid gift of the stocks in question to the defendant Mitchell George.

Affirmed. Costs to defendant (respondent).

CALLISTER , TUCKETT, and ELLETT, JJ., concur.

HENRIOD, J., does not participate herein.

7. See Jean v. Jean, 207 Cal. 115, 277 P. 313; 99 A.L.R. 1077, 23 A.L.R.2d 1071; that acceptance of a gift which is beneficial to the donee is presumed, see In re Kalt's Estate, 16 Cal.2d 807, 108 P.2d 401.

8. Field v. Mollison, 50 Cal.App.2d 585, 123 P.2d 603.

9. Thatcher v. Merriam, 121 Utah 191, 240 P.2d 266; Lynch v. Lynch, 124 Cal.App. 454, 12 P.2d 741.