ESTATE OF MONA E. BETTIN, Deceased, FREDRIC BETTIN, Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bettin v. Commissioner
Docket No. 1773-72.
United States Tax Court
T.C. Memo 1974-102; 1974 Tax Ct. Memo LEXIS 216; 33 T.C.M. (CCH) 499; T.C.M. (RIA) 74102; April 24, 1974, Filed. *216 The decedent transferred money to petitioner three days prior to the date that she was declared legally incompetent.She made three additional transfers of money to petitioner within seven months after the date she was declared legally incompetent. Held: The transfers were not valid gifts to petitioner and accordingly the amounts transferred must be included in her gross estate. Leon Fleishman, for the petitioner. Melvern Stein, for the respondent. *217 WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $101,588.09. Several issues having been settled, the issues remaining for decision are: (1) whether the withdrawals by the petitioner of certain amounts from a joint bank account in the names of himself and the decedent constituted gifts from the decedent to himself; and (2) assuming gifts did result, whether these amounts must be included in the value of the gross estate as a transfer made in contemplation of death pursuant to section 2035. [1]
FINDINGS OF FACT Fredric Bettin, petitioner, is the nephew and executor of the estate of Mona E. Bettin, who died on September 24, 1967. Petitioner was a resident of Los Angeles County, California, at the time he filed the petition. He filed an estate tax return with the district director of internal revenue, Los Angeles, California. Mona E. Bettin (hereinafter referred to as decedent) was born on September 20, 1888, in the State *218 of Kansas. The decedent was a physician throughout her professional years. On January 1, 1964, the decedent was found to have generalized peritonitis from a ruptured diverticulitis of the colon. Emergency surgery was performed that day. A subsequent operation was performed on February 12, 1964. The decedent was able to survive these operations because of her remarkable stamina and good general physical condition. At that time, the decedent showed signs of cerebral arteriosclerosis, manifested by confusion, forgetfulness and bouts of irrationality. On January 1, 1967, the decedent executed a holographic will whereby she devised and bequeathed to the petitioner the major portion of her estate which amounted to approximately $1,000,000. During the month of January 1967, the petitioner made arrangements to be married and was married on May 6, 1967. The decedent attended the marriage and reception. During January 1967, the petitioner also made arrangements to purchase a home. He made an escrow contract to purchase a home on February 20, 1967. On January 4, 1967, the petitioner petitioned the probate court of Orange County for a hearing to declare the decedent incompetent. *219 In support of this petition, the petitioner presented a declaration of the decedent's personal physician, which declaration stated in part: * * * I have been the personal physician to MONA E. BETTIN, M.D. for a number of years. I talked to her on September 20, 1966 and examined and talked to her on numerous occasions since that date. I last examined her on December 24, 1966 and talked with her on December 31, 1966. It is my opinion that she has been totally incompetent, disoriented, and not able to understand and recollect the nature, extent and situation of her property since September 19, 1966. Her condition has deteriorated between each visit from that date. On January 18, 1967, a joint tenancy bank account was opened with a deposit of $37,739.54, which funds belonged to the decedent. This joint account was established in the names of Mona E. Bettin and Fredric Bettin. The decedent and the petitioner went to the bank together to establish this account and both signed the signature card. On January 24, 1967, the petitioner withdrew $33,000 from the joint account. This money was used to purchase a home and furniture for the petitioner and his fiancee. On January 27, 1967, the *220 probate court of Orange Count appointed the petitioner as the guardian of the decedent. On February 1, 1967, the petitioner withdrew $1,803 from the joint account for the purpose of purchasing a guardianship bond. On July 7, 1967, the petitioner withdrew $3,000 from the joint account. He gave this money to his wife. On August 15, 1967, the petitioner withdrew the remaining balance of $82.79 from the joint account. After the appointment of petitioner as her guardian, the decedent maintained her own bank checking account and paid most of her bills from this account. She conducted numerous stock transactions, which resulted in substantial profits. According to the decedent's personal physician, she was in satisfactory physical condition at the time she was declared mentally incompetent and had a normal life expectancy of a woman of her age. On September 24, 1967, the decedent died unexpectedly of bronchial pneumonia which she contracted only two days before her death. On October 27, 1967, the petitioner was appointed the executor of the estate. On January 18, 1968, the probate court of Orange County approved the Waiver of First and Final Account and Report of the *221 Guardian and discharged the guardian. OPINION The first issue for decision is whether the withdrawals by the petitioner from the joint bank account constituted gifts from the decendent to the petitioner. The petitioner argues that the transactions in issue fall precisely within one of the examples of a taxable gift provided in the respondent's regulations. Petitioner cites section 25.2511-1(h) (4), Gift Tax Regs., which provides in part as follows: (h) The following are examples of transactions resulting in taxable gifts and in each case it is assumed that the transfers were not made for an adequate and full consideration in money or money's worth: * * * (4) If A creates a joint bank account for himself and B, * * * there is a gift to B when B draws upon the account for his own benefit, to the extent of the amount drawn without any obligation to account for a part of the proceeds to A. * * * This regulation, however, necessarily presumes that a completed transfer of property has taken place when the withdrawals are made. Whether a completed transfer has taken place so that a property interest has passed must be determined by applying state law to the facts of the transaction. *222 See Charles E. Bedford, 5 T.C. 726 (1945); Carl J. Schmidlapp, 43 B.T.A. 829 (1941); cf. Blair v. Commissioner, 300 U.S. 5 (1937). The essentials of a valid gift under California law are: (1) competency of the donor to contract, (2) a voluntary intent on the part of the donor to make a gift, (3) delivery, either actual or symbolical, amounting to a transfer of title, (4) acceptance, actual or imputed, (5) a complete divestment of all control by donor, and (6) a lack of consideration in return for the gift. Hyman v. Tarplee, 64 Cal. App. 2d 805, 149 P.2d 453 (1944); Field v. Mollison, 50 Cal. App. 2d 585, 123 P.2d 603 (1942). Apparently conceding that all other requirements are present, the respondent argues that the alleged gift is void because the decedent lacked the capacity and intent to make a gift. Although the decree declaring the decedent incompetent was not introduced into evidence, the fact that a guardian was appointed for the decedent establishes that the decedent was mentally incompetent in accordance with California law. This conclusion is supported by section 1460 of the Annotated California Probate *223 Code (1956) which provides as follows: Any superior court * * * may appoint a guardian for the person and estate * * * of an insane or an incompetent person. As used in this division of this code, the phrase "incompetent person," "incompetent," or "mentally incompetent," shall be construed to mean or refer to any person whether insane or not, who by reason of old age, disease, weakness of mind, or other cause, is unable, unassisted, properly to manage and take care of himself or his property, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons. Thus, on January 27, 1967, the date a guardian was appointed for her, the decedent was incompetent under California law and was therefore incapable of contracting. Annotated California Civil Code, section 40 (1954). Accordingly, the decedent was incapable of making a gift as of that date. Since three of the four withdrawals in issue were made within seven months after the appointment of a guardian, we must hold that those three withdrawals did not constitute valid gifts. See, David L. Zips, 38 T.C. 620 (1962). Petitioner argues that the decedent was not incompetent *224 to make the above-described gifts. He attempted to prove this assertion by testimony regarding the various activities in which she engaged after January 27, 1967. He contends that he had the decedent declared incompetent only to prevent her from including bequests in her will in favor of a certain friend who was attempting to take advantage of her. In view of the finding by the courts of California that the decedent was legally incompetent, we do not believe it would be appropriate for this Court to make an independent judgment regarding petitioner's contradictory allegations that the decedent was competent to make a gift but was incompetent to execute a will. The fourth withdrawal in issue was made three days before the decedent was declared incompetent. With regard to this withdrawal, the petitioner argues that a valid gift was made because the decedent was presumed to be competent at that time and the gift was never avoided or rescinded. We agree with petitioner that under California law, a person is presumed to be of sound mind until proven otherwise. Vandor v. Roach, 73 Cal. 614, 15 Pac. 354 (1887). We conclude, however, that this presumption is adequately *225 rebutted in view of the judicial declaration three days later that the decedent was incompetent and the statement by her physician that she had been incompetent since September 1966. Accordingly, we also hold that this withdrawal did not constitute a valid gift. The petitioner further contends that the gifts were valid under the substituted judgment rule, as set forth in In Re Guardianship of Christiansen, 248 Cal. App. 2d 398, 56 Cal. Rptr. 505 (1967). This rule permits a court, under certain limited circumstances, to authorize gifts from an incompetent's estate. The general rule in California, however, is that neither a guardian nor a court has the power to dispose of a ward's property by way of gift. Harris v. Harris, 57 Cal. 2d 367, 19 Cal. Rptr. 793, 369 P.2d 481 (1962). In Christiansen, the guardian, who was also the son and a prospective heir of the incompetent, had petitioned a lower court for authorization to make gifts to children and grandchildren of the incompetent to decrease the burden of excessive taxes against the estate and to permit enjoyment of the property of the incompetent by her family during her lifetime. The order of the lower *226 court being adverse, the guardian appealed. The appellate court in Christiansen phrased the issue before it as follows: "Do California courts have power and authority to authorize gifts from the principal of an incompetent's estate, and if so, what factors determine whether such authority should be granted?" The court concluded that such a power to authorize gifts existed when the purpose of the transfers was to avoid unnecessary estate and inheritance taxes or expenses of administration and when it appeared from all the circumstances that the incompetent, if sane and acting as a reasonably prudent man, would so plan his estate, there being no substantial evidence of a contrary intent. The court set forth several criteria that must be proved to gain court authorization, only one of which is important with regard to the present factual situation. The incompetency of the ward must be a permanent condition, although the necessity of this requirement is less important when the evidence shows a practice or custom of gift-making by the incompetent. In view of these rigid criteria, we fail to find that the alleged gifts were valid in accordance with the substituted judgment rule. In Christiansen, *227 the guardian had petitioned a court to authorize specific gifts whereas in the present case the petitioner never sought authorization of a court before he made the withdrawals in issue. Petitioner contends that it is proper under the substituted judgment rule to obtain authorization after the gifts have actually been made and that the approval of the Waiver of the First and Final Account and Report of the Guardian constitutes such an authorization. We disagree with both of these contentions. The Christiansen case never suggests that the strict criteria enunciated by it should be relaxed to permit authorization of gifts after the fact. Furthermore, because the judicial approval of the guardian's account was uncontested and perfunctory, it is not res judicata with regard to the respondent. See, Edgar M. Carnrick, 21 B.T.A. 12, 23 (1930). Even if we were to conclude that prior court authorization is not necessary, the present factual situation would still not meet the criteria set forth in Christiansen since the petitioner has not adequately proven that the decedent's incompetency was a permanent condition. To the contrary, he was attempted to prove that the decedent *228 was competent after the legal declaration of incompetency. The necessity of this requirement is important in the present case because the evidence does not show a custom of gift-making by the decedent to petitioner. Having determined that the four withdrawals in issue did not constitute valid gifts and therefore must be included in the gross estate of the decedent, we find it unnecessary to determine whether the alleged gifts were made in contemplation of death pursuant to section 2035. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise indicated. ↩