Chester V. BUTTARS, Plaintiff and Appellant,

v.

Asael M. BUTTARS, Defendant and Respondent.

No. 17136.

Supreme Court of Utah.

June 2, 1981.

N. George Daines, III, Logan, for plaintiff and appellant.

Miles P. Jensen, Logan, for defendant and respondent.

OAKS, Justice:

This action to quiet title requires this Court (1) to determine the nature of an interest created under the provisions of a will and (2) to determine whether a prescribed special limitation took effect.

The decedent, who died in 1961, provided by will for his wife and five children, including the plaintiff and defendant in this action. In an apparent effort to provide for his wife's support and to relieve her from management responsibilities, he devised real estate to his sons, but obligated them to pay annual sums to their mother. Only one aspect of that disposition is at issue in this litigation: the devise to and the payments required to be made by one son, defendant Asael. This disposition is challenged by another son, plaintiff Chester. In this action, Chester seeks to quiet title in himself to ⅕ of the 60 acres devised to his brother Asael, who has been in possession since 1961, upon the basis that Asael forfeited his ownership by failing to make the required annual support payments to their mother. The district court found for the defendant, Asael. We affirm.

The terms of the 1962 decree of distribution under the will are now final and conclusive on the parties. *Miller v. Walker Bank & Trust Co.*, 17 Utah 2d 88, 89–90, 404

P.2d 675 (1965). It was there decreed that the 60 acres in question be distributed to defendant Asael "subject to the above conditions and obligations in favor of his mother," during her lifetime, "and thereafter subject to" required payments to his four brothers and sisters, "all of whom are hereby given a lien upon said premises to secure the payment thereof." [1] Asael's "conditions and obligations in favor of his mother" were described in the decree of distribution as follows:

If said [Asael] shall fail to pay and perform all of the above required of him [specifically, to pay his mother the sum of $500 annually during her lifetime], then *all of his rights to succeed to said property shall fail,* in which event all of said property shall be subject to a life estate in [the mother] and upon her death, all of said property shall become part of the rest, residue, and remainder under the terms of said will [which residue was devised ⅕ to each child].[2] [Emphasis added.]

■ 1. On the basis of these provisions of the decree of distribution, we cannot agree with defendant Asael's argument and the district court's conclusion that Asael took a fee simple absolute, subject only to a lien to secure his payment obligations to his mother and the others. By its terms, the lien was designated to secure only the payments to the brothers and sisters. In contrast, in respect to Asael's duties toward his mother, the property was specified to be subject to "conditions" as well as to "obligations." The express condition emphasized above provides that "all of [Asael's] rights to succeed to said property shall fail" if he does not "pay and perform" what was required of him with respect to his mother.

We think it evident from the provisions of the decree of distribution pertaining to this 60 acres that defendant Asael took only a fee simple determinable, as described in *Restatement of Property,* §§ 23, 44 (1936); 2 Powell, *The Law of Real Property,* § 187 (Rohad, ed.1977); Simes & Smith, *The Law of Future Interests,* §§ 281–82 (2d ed.1956); 4 Thompson, *Real Property* § 1871 (Grimes Repl.vol.1979).[3] His fee simple ownership was subject to termination by special limitation upon the occurrence of a stated event—failure of payment and performance to his mother. Although most special limitations in fee simple determinable are based on conditions of survivorship or use,[4] there is no reason in principle why the stated event cannot concern the payment or nonpayment of money. There is some authority to this effect,[5] and we have been able to find none to the contrary.

■ In the event of termination according to the special limitation, the property would go by right of reverter to the mother for life and then, under the residuary clause of the will, in equal shares to the testator's

1. The required payments to brothers and sisters were $3,000 each. These amounts, secured by the lien mentioned above, have admittedly been paid or are due on the conclusion of this litigation, and are not in issue here.

2. A subsequent provision in the decree specified that the estate "remain open" in case "default be made" by Asael or another brother with a similar condition in their performance in connection with their bequests. It further provided that "upon performance this fact can be shown by recording quitclaim deeds or release[s] from the various persons who are entitled to payment upon the death of [the mother], in which event no further proceedings in this estate need b[e] taken."

3. The difference between a fee simple determinable and a fee simple subject to a condition subsequent, Restatement of Property §§ 24, 45 (1936), is discussed in *Preas v. Phebus,* 2 Utah 2d 229, 234–35, 272 P.2d 159 (1954).

4. E. g., *Moore v. Second Congregational Church,* 115 Colo. 392, 175 P.2d 90 (1946); *Corley v. Parson,* 233 Ga. 845, 213 S.E.2d 693 (1975); *Pure Oil Co. v. Miller-McFarland Drilling Co.,* 376 Ill. 486, 34 N.E.2d 854 (1941); *Burdette v. Jones,* 34 Ohio Op. 488, 72 N.E.2d 152 (1947).

5. One of the classic examples of a special limitation at common law was "till default shall be made in payment of his debts." Simes & Smith, *supra,* at § 286, n. 48, example 10. Also, see *In Re Walker* (1939), 1 Ch. 974 (sustains effect of gift in trust with limitation over to beneficiary's children if he shall become bankrupt), and other English cases discussed in Bogert, Trusts and Trustees, § 221.

five children. As one of those children, Chester would be the owner of a ⅕ interest in the property following his mother's death. As a result, plaintiff Chester was a proper party to commence this action to determine whether the specified event had occurred, and the district court would not have been correct in basing its finding of no cause of action solely upon the basis that Chester was not a proper party plaintiff.

■ 2. Since Asael held the 60 acres on a fee simple determinable, with his estate to terminate by special limitation if he should "fail to pay and perform" his $500-per-year obligation to his mother, the remaining question is whether his performance failed and that limitation took effect. Despite Asael's admission that he paid only 7 of the 14 annual payments owed to his mother during the period from 1961 through her death in 1976, the district court found for Asael on the basis of waiver and satisfaction. Citing the "special relationship" that existed between Asael and his mother and the fact that he performed many personal and business services for her each year, the district court found as follows:

> The payments required to be made annually from [Asael] to [his mother] were tendered and/or made to, or waived by [the mother]; and in any event, [the mother] accepted other considerations in lieu of cash payments.

■ The district court's finding of waiver and satisfaction by the mother, which is supported by substantial evidence in the record, shows that the required payment or performance did not fail and therefore that the critical "stated event" did not occur. While it is true that the terminative effect of a special limitation is independent of the will of the parties and therefore cannot be waived or avoided by acquiescence,[6] a voli-

tional act like waiver can be considered when relevant to determining whether the stated event has occurred. When the stated event is the payment of money, as in this case, waiver or satisfaction of the obligation is open to inquiry since, in contrast to stated events like marriage or survivorship, an obligation for the payment of money is subject to being measured and satisfied by the transfer of equivalent property or services or being waived by an identified obligee.

The district court's finding was therefore appropriate under the law, and establishes that the special limitation did not take effect. Consequently, upon the death of the mother, Chester's right of reverter was extinguished and Asael's interest ripened into a fee simple absolute, subject only to the specified lien to secure his required payments (plus interest) to his brothers and sisters.[7]

■ Plaintiff's argument that Asael must establish his title by proving his mother's "gift" by clear and convincing evidence, *Sims v. George*, 24 Utah 2d 102, 466 P.2d 831 (1970), is misplaced, since the factual issue in this case was not proof of gift but proof of waiver or satisfaction of obligation by one who was already the title holder of record. On that issue, proof by preponderance of the evidence is sufficient. *Koontz v. Fleming*, 17 Tenn.App. 1, 65 S.W.2d 821, 825 (1933); *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958).

■ Plaintiff's argument that the deadman's statute, U.C.A., 1953, § 78–24–2, precluded Asael's testimony about transactions with his mother (relevant to the issue of waiver or satisfaction) is also misplaced. The deadman's statute is inapplicable in this case, because this is a controversy between two heirs, not a contest between an estate and a claimant. *Carnesecca v. Car-*

6. E. g., *Colby v. Sun Oil Co.*, Tex.Civ.App., 288 S.W.2d 221, 223–24 (1956) (failure to drill oil well within specified time).

7. This holding in favor of the party in possession makes it unnecessary to discuss and we intimate no opinion on whether that party might also have prevailed under the statutes of

limitation or adverse possession, U.C.A., 1953, § 78–12–5, *et seq.*, even if the specified event of non-payment had occurred at some point between 1961 and 1976 so that the life estate and remainder interests had then reverted to the mother and the descendants.

*nesecca,* Utah, 572 P.2d 708 (1977); *Staats v. Staats,* 63 Utah 470, 226 P. 677 (1924).

The district court was correct in finding in favor of the defendant, and its judgment is affirmed. Costs to defendant.

MAUGHAN, C. J., and HALL and HOWE, JJ., concur.

STEWART, J., concurs in the result.