BAMBERGER CO. et al. v. CERTIFIED PRODUCTIONS, Inc., et al.

5577. Decided July 26, 1935. (48 P. [2d] 489.)

*A. H. Hougaard and B. P. Leverich,* both of Salt Lake City, for appellant.

*Morris & Callister,* of Salt Lake City, for respondents Bamberger Co. and Simon Bamberger Co.

*F. C. Loofbourow and L. L. Robinson,* both of Salt Lake City, for respondents Fegley and Hodges.

WOLFE, Justice.

On October 18, 1932, the plaintiffs and the assignor of the Certified Productions, Inc., entered into a written lease for the letting of certain premises on Main street in Salt Lake City for a period of ten years, the rent to begin on January 1, 1933. Plaintiffs now sue the defendant corpora-

tion as lessee and the personal defendants as sublessees for restitution of the premises, setting out four causes of action. The fourth cause of action was dismissed, and on the third cause of action a judgment of no cause of action was entered, leaving the first and second causes only to be dealt with in this appeal. The ground set out in the first cause of action for restitution of the premises was an alleged default in the payment of a net rent of $5,297.09. Restitution of the premises was asked in the second cause of action on the ground that the defendant company had failed and neglected to keep and preserve said leased premises at all times free of liens or other encumbrances and have permitted mechanics' liens to be placed thereon, allegedly contrary to the conditions and covenants of the lease.

The defendant corporation set up as an answer to both causes of action that there were supplemental agreements which modified the original lease, and that such supplemental agreements in reference to the covenants and conditions which plaintiffs claim were broken were acted upon by the corporate defendant, and that it materially changed its position in reliance upon them. Nothing is said in either defense as to the supplemental agreements or modifications being in writing. The lease, being for a period of ten years, was governed by the statute of frauds (Rev. St. 1933, 33-5-3). Where a complaint or answer, which sets up a contract or modification required by the statute of frauds to be in writing, is silent as to whether it was in writing, it will be assumed to be in writing until the contrary appears. *Case* v. *Ralph,* 56 Utah 243, 188 P. 640. But in this case, while the answer was silent as to the character of the modification, both sides treated it as being oral and a motion to strike as hereunder set forth was argued as if it had been pleaded as oral.

Plaintiffs moved to strike the first three paragraphs of the corporate defendant's answer to the first cause of action, and also moved to strike the first paragraph of the said defendant's answer to the second cause of action. Such parts

of each answer as are material will later appear in this opinion. The motion to strike was upon the ground that the allegations of such paragraphs attempted to modify and vary the terms of a written instrument, further claiming that the said modifications as alleged were oral and not in writing. At the trial the court struck all of the paragraphs covered by the motion, which practically left the corporate defendant without a defense. While the motion to strike did not specifically assign as a ground for the motion that there was an attempt to vary a contract required to be within the statute of frauds by an oral modification, yet, the argument proceeded upon that basis.

It is important to note that if the stricken paragraphs can avail the corporate defendant as a defense on any theory, the court was in error in striking them. Evidently the theory upon which the court struck the matters of defense was that the said matters alleged an oral modification of a written lease required by the statute of frauds to be in writing and that such could not be done. The arguments of counsel before this court on the asignments of error practically all turn about the question as to whether or not the court was in error in this theory. The parties first divide on the question as to whether an oral modification of an agreement required to be in writing by the statute of frauds can be set up as a defense, granted it is shown in addition that the defendant had acted on said oral modification and had performed in accordance therewith and materially changed its position by reason thereof. Many cases have been cited to the effect that such oral modification may be enforced where the modification or new agreement has been executed, or where the particular part of the original agreement changed or modified is not one required to be by the statute of frauds in writing, or where the party seeking to avoid the oral agreement has received material benefit therefrom, or where the situation is such as to work an estoppel of the party seeking to avoid the

effect of the agreement, or where such modification constitutes a waiver of the original terms of the contract.

At the outset, it may be said that there is no question but that parties may orally modify an agreement in writing where the original contract is not required by the statute of frauds to be in writing, at least where there is consideration for such modification. We make no statement concerning the case where the original contract is not required to be in writing, but the matter covered by the modification is in reference to a subject covered by the statute of frauds. A different question presents itself when the original contract is required by the statute of frauds to be in writing. As a broad general doctrine, it may be announced that a contract required by the statute of frauds to be in writing cannot be modified by a subsequent oral agreement. At the moment the principle is thus announced, it is immediately subject to many and varied exceptions. The first great division comes between executory and executed modifications. Even where the contract is still executory and specific performance is asked, or where an action is brought, on the contract as originally written, for failure to perform and the modification is set up as a defense to the alleged failure, or where the action is brought upon the original contract with its oral modifications as the basis of the suit and defense to the action is made on the ground that such contract was not wholly in writing, the courts have recognized the validity of the oral modifications in certain cases. The rule that there can be no oral modification of a contract required by the statute of frauds to be in writing has been most rigidly enforced in England where, as a general rule, even an oral modification permitting an extension of time in which to perform has been held invalid. Most of the courts of this country hold, as a general rule, that an oral modification of a contract required by the statute of frauds to be in writing will not be permitted. Exceptions have been made by some courts where the matter in the original contract which has been modified was not such

matter as was required to be in writing. Other courts have made a supposed distinction between matters relating to performance, permitting such matters to be modified. This would appear to be a difficult line to draw because most of the provisions of the contract are to be performed. As stated in the case of *Rucker* v. *Harrington,* 52 Mo. App. 481:

"But a contract is only burdensome because of the consequence of performance flowing from it. Per se the contract is harmless. It is the performance that does the hurt. It is, therefore, at least, equally proper to say that the principal design of the statute was to protect parties from the performance of burdensome contracts which they never made. Therefore, if you may enforce an oral agreement for a substituted performance of a written agreement, you apply the statute to the shadow and withhold it from the substance. Such application of the statute only makes it necessary that parties have a contract in writing; then, under the guise of performance, the contract enforced is shown by parol."

In the instant case, as will be noted when we come to consider the alleged modifications, it is claimed there was an agreement to forego rent for a certain period pending the making of required alterations. Payment of rent deals with performance. If oral substituted matter relating to performance is valid, then it may orally be shown in an executed contract that the lessor agreed to take a different rent. What the cases usually mean when they speak of substituted performance relates to matters incidental to performance, such as an extension of the time in which performance may be made, or the manner or method of performing, such as payment in commodities instead of money, or payment to the creditor of the person entitled under the contract to the money instead of to such person himself. The distinction there sought to be made is that the subject-matter of the contract has not been changed, but only the method of performing it.

For a comprehensive discussion of the exceptions and variations of the general rule heretofore announced, reference is made to a 50-page note in 17 A. L. R. 10, where numerous cases are discussed and analyzed.

It is claimed by the corporate defendant in this case that the modified part of the contract was by it performed. Consequently we may proceed immediately to a consideration as to whether an oral modification which has been acted upon is valid. Here again, there is a division of authority. The note in A. L. R. cites in the United States, California, Illinois, Kansas, Minnesota, Mississippi, Nebraska, New York, North Carolina, Ohio, Oregon, Pennsylvania, Washington, and Wisconsin, as states in which it has been held that where an agreement as modified has been acted upon the rights of the parties are to be determined by the modified agreement. As stated by Mr. Justice Cardozo, then justice of the Court of Appeals of New York, in *Imperator Realty Co.* v. *Tull,* 228 N. Y. 447, 127 N. E. 263, 266:

"Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. * * * We need not go into the question of the accuracy of the description. * * * The truth is that we are facing a principal more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principal that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. * * * The statute of frauds was not intended to offer an asylum of escape from that fundamental principle of justice."

We accept this principle. If a party has changed his position by performing an oral modification so that it would be inequitable to permit the other party to found a claim upon the original agreement as unmodified or ■ defeat the former's claim by setting up a defense that performance was not according to the written contract, after he has induced or consented to the former going forward, the modified agreement should be held valid. We have held in *Kerr* v. *Hillyard,* 51 Utah 364, 170 P. 981, that a contract required to be in writing when fully executed is not within the statute of frauds, although originally oral. Logically, an oral modification of a contract required to be in writing when such modification is fully executed is taken out of the statute.

The plaintiffs claim that the matter stricken did not show a change of position, but that it only showed the performance of obligations which the corporate defendant was under the original lease required to perform. That is to say, said defendant did not do anything which it was not required under the original contract to do; consequently it has not changed its position and there would be no inequity or fraud upon the defendant if it was not permitted to set up such alleged modifications. Another way of stating plaintiffs' claim is to say that the modifications alleged by the defendant have been modifications in the nature of recession by the plaintiffs of their rights under the original agreement whilst no new obligations are required of or are to be performed by the defendant. Nor has it suffered any detriment by such modifications which it would not have suffered by performing under the terms of the original agreement.

This brings us to a point where we are required to make a careful analysis of certain provisions of the lease and the paragraphs of the answer heretofore referred to. The material parts of the lease which must be considered in this analysis under the first cause of action are as follows:

"Third: * * *

"(4) The Lessee shall not make any alterations in, additions or improvements to the leased premises without the prior written consent of the Lessors, except that the Lessee shall have the right and he hereby agrees to alter and remodel, at his own expense, the interior and front of the building in said demised premises into a theatre suitable for the purposes for which the said premises are hereby leased, the plans and specifications, however, for said alterations and remodeling to be first approved by the Lessors and further approved by the duly authorized officers of and made in accordance with the ordinances of Salt Lake City, Utah, and the laws of the State of Utah, and for the purpose of making said alterations and remodeling the said premises the Lessee shall have the right to enter into the possession and occupancy of the demised premises on the 21st day of November, 1932.

"(5) The Lessee agrees to furnish, or cause to be furnished, to the Lessors, a bond in the sum of $5,000.00, as required by chapter 3, title 62, Compiled Laws of Utah, 1917, for the protection of said

Lessors against any liability or lien arising by reason of materials furnished or labor performed in the alteration and remodeling of the demised premises for the purposes hereinabove mentioned; and when the Lessee shall start alterations on said building the Lessee shall furnish a performance bond or securities acceptable to the Lessors sufficiently large enough to insure the completion for any and all alterations made in said building.

"(6) The Lessee hereby agrees that he will, at his own expense during the entire term of this Lease, well and sufficiently repair, maintain and keep in repair the demised premises and all parts thereof, and all plumbing and other fixtures therein, and that he will on or before February 1, 1933, at his own expense, expend in remodeling, altering and reconstructing the interior of the demised premises including the installation of suitable equipment and furnishings for theatre purposes, not less than the sum of $10,000.00. The Lessors agree to paint, prior to the opening of said theatre, building above the first floor."

The paragraphs of the defense to the first cause of action which were stricken read as follows:

"1. That at the time the said lease was entered into, the said plaintiffs warranted that the building was fit and proper for the uses that this defendant intended to use the same for, namely, a picture show business, after certain remodelling contemplated by the defendant was made.

"2. That on the signing of the lease, the defendant company immediately commenced the work of remodelling of the building and shortly thereafter were notified by the building inspector for Salt Lake City and the fire department of Salt Lake City that the building with the contemplated alterations could not be used for a picture show business, with the result that the defendant company was compelled to abandon the project or else seek another building in which to carry on its business. That another building, namely the building known as the Callaway, Hoock & Francis Building at about 72 South Main Street was found by these defendants and arrangements were made to rent the same.

"3. That immediately on the plaintiffs herein learning of this, they went to the defendant company and entered into a new agreement under which it was agreed that the defendants herein should make further alterations to the Bamberger Building than had been contemplated so as to meet the requirements of the building inspector and fire department, and in consideration of the defendant company making such changes and alterations, these plaintiffs agreed that

no payment should be required during any of the time used in the alterations of the building, and further agreed that when the building was completed and ready for occupancy that the rental which otherwise would have been due and owing at that time under the terms of the agreement set out should either be waived in total or if not in total then a proper adjustment would be made depending on the extra expense defendants were put to and the due date of the payments should be spread over a period of several years, and had such an agreement not have been made, the defendant company would not have continued to occupy the said premises or made the alterations in the building which it was compelled to make."

The two principles which must govern in the analysis are as follows: (1) If the parts of the answer stricken have any office as a valid defense, the order striking them would be erroneous; and (2) in construing the matter stricken to so determine whether it has any office every intendment, inference and implication which would support it as a valid defense must be given to it. The answer is remarkable for what it fails to state. Paragraph 2 alleges that the corporate defendant immediately commenced the work of remodeling the building. It does not state whether the defendant complied with the provision in subparagraph 4 of the lease in drawing plans and specifications and having them approved by the lessors or approved by the duly authorized officers of Salt Lake City. It then goes on to allege that it was notified by the building inspector and the fire department that the building with the "contemplated alterations" could not be used for a picture show business. It does not state whether the building inspector or the fire department had authority to pass upon such a building. It does not state whether the ordinance of Salt Lake City permitted such officer or department to pass upon contemplated alterations. It does not set up that the ordinances of Salt Lake City had been complied with. We are left in the dark as to whether there were ordinances specifically setting forth the requirements of a theater construction or whether the ordinance left such decisions up to some officer, and, if so, which officer. As far as the answer is

concerned, it may be that the officers of Salt Lake City were mere volunteers, and that the defendant would not have had to consult them or obey their warnings or instructions. When we come to the words "contemplated alterations" used in the second paragraph and the phrase "further alterations to the Bamberger Building than had been contemplated" used in the third paragraph, we immediately get the impression that there were some definite alterations contemplated between the parties. The next question which presents itself is: (1) Do such phrases refer to contemplated alterations which were definite and certain by the terms of the contract, or (2) to some reservations or understanding which the parties had in their minds not contained in the contract, or (3) is the contract, while certain and definite on its face, yet when its language is applied to the subject-matter, found to be ambiguous so that evidence might be introduced to show what was in the minds of the parties when they used certain terms or which might be material to invest such terms with a meaning which the parties themselves had given them or understood by them— that is to say, a latent ambiguity? Thus, in the case of *Klueter* v. *Joseph Schlitz Brewing Co.*, 143 Wis. 347, 128 N. W. 43, 32 L. R. A. (N. S.) 383, it is stated:

"Ambiguity in a written contract calling for construction may arise as well from words plain in themselves but uncertain when applied to the subject-matter of the contract, as from words which are uncertain in their literal sense."

As stated before, we must give the defendant the benefit of every implication or inference which may arise out of the language of the parts stricken. Certainly, if the contract itself states definitely, so that there is no latent or patent ambiguity as to what alterations are required, then there would be no room for any evidence as to what the parties contemplated as comprising the necessary alterations. If, on the other hand, the contract, while on its face appearing to be certain, would open up an am-

biguity when attempts were made to apply it to the subject-matter, then such ambiguity could be resolved by evidence of what meaning the parties themselves intended to invest such terms. In looking at the contract, subparagraph 4, we find that the lessee is restrained from making "any alterations in, additions or improvements to the leased premises without the prior written consent of the Lessors." There is one important and necessary exception. That is that the lessee shall have not only the right, but is required to alter and remodel the interior and front of the building. These alterations are limited as follows: First, so as to make a "theatre suitable for the purposes for which the said premises are hereby leased." The kind of a theater for which the premises are leased is set out in subsection (1) of paragraph third of the lease, being stated to be for "motion pictures, talkies and all lawful screen representations and reproductions and all other lawful reproductions and public exhibitions usual and customary in the operation of a theatre." This measure of the kind of theater is itself somewhat indefinite. Second, the alterations which the defendant may make are further limited by requiring the plans and specifications thereof to be approved by the lessors and other duly authorized officers; and, third, limited in that they must be in accordance with the ordinances of Salt Lake City and the laws of the state of Utah.

It would appear from these provisions that there might easily be a latent ambiguity when it comes to applying these provisions to the actual performance of the contract. We cannot tell, and only the evidence could show it. The question as to whether there was a definite ordinance of Salt Lake City which would itself be equivalent to plans and specifications is not revealed. Whether the plans and specifications were to meet certain conversations which the parties had would only be revealed by the evidence. What alterations which the defendant could make to the interior and front of the building and still meet the rather uncertain requirements as to a suitable

theater as meant by the lease without running counter to the requirement that no alterations should be made without the written consent of the lessor except those required to make such suitable theater might turn out to be ambiguous when it actually came to applying the provision. It is not certain, however, that we need go to the extent of even analyzing the above provisions of the lease in order to conjecture whether there would or could be such a latent ambiguity. We believe that we must, for the purpose of testing whether the motion to strike was correct, hold that the term "contemplated alterations" used in the answer implies that there was room for the introduction of evidence which would tend to prove that alterations were contemplated by the language of the lease which required oral evidence to make that language intelligible when it actually was attempted to apply it to the performance, although on the face of the lease it may have had the appearance of being definite. It might appear otherwise at the trial, but giving the defendant the benefit of every implication, we must conclude that its answer alleged such a situation. Had the plaintiffs demurred to the answer on the ground that it was ambiguous and uncertain, the demurrer should have been sustained. The court, before doing the drastic thing of striking, could, with propriety, have inquired whether the defendant could make more definite and certain by amendments, his theory. Had the defendant asked for permission to amend, undoubtedly the court would have permitted it. The defendant might still have asked permission to amend when he discovered that the court intended to grant the motion to strike. But we are not prepared to say that failure to make such motion, in view of the court's decision to strike, would be a waiver of defendant's right to object to the erroneous order of the court striking the paragraphs. The record does not reveal that the motion to strike was brought up on any law and motion day. It evidently was presented for the first time during the progress of the trial, so that when stricken the defendant had the right to proceed

with the trial without the aid of such matter and assign the ruling as error.

If we assume, which we must for the purpose of testing the correctness of the motion to strike, that the answer set up sufficient, in the absence of a special demurrer, to introduce evidence on the question of whether the terms of the lease were invested by the understanding of the parties with a certain meaning as to contemplated alterations, we must further assume that such evidence would have revealed that the contemplated alterations were less than those required by the modification. It may be that the evidence would not have so revealed. It may be that the evidence would have revealed that there were no contemplated alterations except those as shown by the lease, however latently uncertain that might be. It may be that such contemplated alterations, if evidence had been taken, would be shown to be the same as those which the defendant actually made. But that is all in the realm of speculation. The point is that the answer sets out sufficient matter from which it can be implied, giving the defendant every benefit of the doubt, that it could have shown that there was a certain quantum of alterations which were contemplated by the parties as meeting the requirements of the terms of the lease if they themselves were latently uncertain (a matter as to which the evidence would reveal), and that by striking such parts the defendant was denied the right to tender evidence to that effect. If such evidence had been introduced, which would have tended to establish that there was an understanding as to what would be approximately required in the way of alterations, and that by an oral modification the defendant had agreed to do more and spend considerable more money, then there certainly would have been consideration for the foregoing of rental over a certain period, and the defendant would have materially changed its position as compared to that which it had to assume under the terms of the contract. It follows, therefore, that in such case the defendant would have performed an oral modification different and more onerous

from that which it would have been compelled to have performed under the written agreement. The performance of such oral modification could be used as a basis of a cause of action or as a defense in accordance with the principle earlier set out in this opinion. It may be urged that the defendant should have asked the court to withhold its order striking the parts and asked for permission to amend, but the motion to strike was based upon the ground that it was an unpermissible modification of a written contract, and the court evidently came to the same conclusion. Consequently, the defendant might have reasonably concluded that a request to make the answer more definite and certain would have availed it nothing because of a reasonable belief that the court took the position that any oral modification of a contract required to be in writing was no defense, regardless of whether executed or regardless of whether the performance by the defendant of such oral modifications required additional acts to be done over those required by the original contract.

Proceeding with the analysis of paragraph 2 of the answer to the first cause of action, we find that it states that the

"building with the *contemplated alterations* could not be used for the picture show business with the result that the defendant company was compelled to abandon the project or seek another building in which to carry on its business." (Italics supplied.)

Giving the defendant the benefit of the doubt, this may have been a poor way of alleging that the defendant would be compelled to abandon the lease as provided by paragraph 5, which reads as follows:

"Fifth: This lease is to become effective only if a permit to equip and operate a theatre therein is granted by Salt Lake City; provided, however, that if at the end of thirty days from date hereof he is unable to get permit or the performance bond mentioned in Paragraph No. 5 hereof, then lease is cancelled and the One Hundred Dollars ($100.00) becomes the property of the Lessor."

The defendant, if the conditions were right, could abandon the lease, forfeiting the $100. This conclusion could be reached if paragraph 5 of the lease was interpreted to mean that the lease was to become effective only if a permit to equip and operate a theater according to the "contemplated alterations" would be granted by Salt Lake ∎ City, and that if Salt Lake City would not grant a permit to operate a theater altered as contemplated by the parties (such contemplated alterations susceptible of being made definite only by evidence), that then the lease could be considered as canceled. The time provided for the obtaining of the permit was thirty days from the date of the signing of the lease, but since the defendant alleges that it immediately commenced the work of remodeling the building and was notified by the building inspector that it could not be used as a picture showhouse with the contemplated alterations, it is a fair inference that it was discovered that the city would not grant the permit within the thirty-day period allowed. The fact that such theory was poorly reflected by the wording of the answer might have been ground for a motion to make more definite and certain, but not a ground for striking the matters in the answer.

From what has been said above, we must conclude that the order striking subparagraphs 1, 2, and 3 of paragraph third of the defense to the first cause of action was error.

It remains to see if the plaintiff is entitled to restitution under its second cause of action. Here again we must analyze the answer to see if, after giving the defendant every benefit of the doubt, it sets up a situation which involved a change of position which the plaintiff could not take advantage of if it agreed to it, and if the defendant acted upon the oral modification.

The paragraph of the defense to the second cause of action which was stricken reads as follows:

"1. That after the said written lease was entered into a supplemental agreement was made between the plaintiffs and defendant

herein under which the plaintiffs agreed that should the defendant furnish a surety bond to the contractor for the faithful performance of his duty, said bond to provide that the bonding company would in turn pay any liens that might be placed on the building, that the terms of the lease set out in paragraph two of said amended complaint would be waived. That relying upon the same and on February 15, 1933, the defendant herein furnished a bond of the Pacific Indemnity Company in the sum of $8,000.00 to protect the contractor and the defendant from any liens filed against the building, this bond being a continuous one for a period of one year. The said bond, although running for a period of one year, required that liens should be filed within a certain time but this defendant at the request of the plaintiffs herein, on August 16th, September 13th, October 12 and November 15th of 1933, and January 16th of 1934, had the time for the filing of liens under this bond extended from time to time, all of which was done at the request of plaintiffs and on the plaintiffs' assurance that the provisions of the lease as herein referred to would be waived."

Under the written lease, the lessee was required to furnish a bond of $5,000 as provided by chapter 3, title 62, Comp. Laws Utah 1917 (section 3759-3763). The bond was to provide for the protection of the lessors against any liability of any lien arising by reason of any materials or labor furnished in the alterations by the lessee. It further provided that the lessee should provide a performance bond to insure the completion of any and all alterations to the building. Here again it is difficult to glean from the answer any allegations which definitely set up a change of position acted upon. The answer states that there was a supplemental agreement "that the defendant should furnish a surety bond to the contractor for the faithful performance of his duty." It is difficult to see why the defendant should furnish a bond to the contractor rather than to the lessor, or rather than to take a bond from the contractor. Subparagraph 5 of paragraph third of the lease provided that the bond should be for the protection of the lessor. The answer to the second cause of action proceeds to allege that the defendant furnished an $8,000 bond to protect the contractor and the defendant from any liens filed against the

building. The bond provided for in chapter 3, title 62, supra, appears to be for the purpose of protecting the materialmen and those furnishing labor against nonpayment of their accounts by the contractor. The answer further alleges that at the request of the plaintiffs the time for filing liens under the bond was extended from time to time, and that the liens would not have been filed had the extension of time not been arranged for, which was at the request of plaintiffs. While it may be difficult to get a satisfactory picture out of this answer, it appears to set up a situation wherein the plaintiffs requested the defendant to extend the time for filing liens so that liens might be filed. If this is true, the plaintiffs could not take advantage of the fact that the liens had been filed, because it is tantamount to stating that the plaintiffs and defendant agreed that liens might be filed to be taken care of by the bondsmen. Here again we have a case in which it may be inferred from the answer that the defendant, by the representations and promise of the plaintiffs, so changed its position that it would be inequitable for the plaintiffs to take advantage of the fact that such modification was oral. Whatever might ultimately result from the evidence in support of the allegations in the answer, opportunity should have been permitted to show whether the situation set out in the answer to the second cause of action was as there alleged. It was therefore error to strike the above-quoted paragraph 1 of the answer to the second cause of action.

From what has been said above, it is clear that assignments of error Nos. 1, 2, 4, 5, and 6 are well taken. It is unnecessary to consider assignment No. 3, as the judgment must be reversed. Such is the order. Costs to appellant.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.