Parley WHITE dba Parley White Realty Company and Mount Olympus Realty, Inc., Plaintiffs, Respondents and Cross-Appellants,

v.

Arlen FOX and Janyce B. Fox, his wife, Defendants, Appellants and Cross-Respondents.

No. 17653.

Supreme Court of Utah.

June 9, 1983.

Anthony M. Thurber, Salt Lake City, for defendants, appellants and cross-respondents.

Scott W. Cameron, Salt Lake City, for plaintiffs, respondents and cross-appellants.

DURHAM, Justice:

This is an action by the respondents Parley White Realty Company and Mount Olympus Realty Company for real estate commissions allegedly due and owing from the appellant Arlen Fox. The case was tried before a jury, which found that the respondents had waived their rights to the real estate commission under the listing agreement. We affirm.

Mr. Fox has been a builder and developer of residential property in the Salt Lake City area for approximately 25 years. During that time, he has had numerous dealings with many of the real estate brokers in the area, including the respondents. On January 2, 1976, Mr. Fox executed a six-month exclusive listing agreement with Mount Olympus Realty regarding his property in Sandy, Utah. Rex Gardner was the listing agent in that agreement.

In late January or early February of 1976, Phyllis Scott, a real estate agent for Parley White Realty, and Mr. Gardner showed Mr. Fox's property to Ronald Dee and his family. Because Mr. Fox was not home and because Mr. Gardner did not have the correct key to gain access to Mr. Fox's home, Ms. Scott and Mr. Dee returned a few days later to examine the interior of the house. Several days thereafter, Ms. Scott telephoned Mr. Dee to inquire about his interest in purchasing Mr. Fox's property. Mr. Dee stated that the asking price was too high. A few weeks later, Ms. Scott again telephoned Mr. Dee, who informed her that he just couldn't afford the price. Mr. Dee testified at trial that Ms. Scott stated at this time: "Well, why don't you

and Arlen get together and make your own deal on it then." During this same time period, Ms. Scott had discussed with Mr. Fox the possibility of selling the property to, or exchanging properties with, Mr. Dee. Mr. Fox informed Ms. Scott that, if he were to trade properties with Mr. Dee, there would not be any room for payment of a commission pursuant to the listing agreement. According to Mr. Fox's testimony, Ms. Scott told him that if he could get together with the Dees, who were friends of hers, and make a trade on their own, to "go ahead and do it."

Subsequent to these conversations, Mr. Dee contacted Mr. Fox to discuss the possibility of exchanging properties. In May of 1976, Mr. Fox went to the offices of Mount Olympus Realty to discuss with Mr. Gardner the statements made by Ms. Scott. Upon his arrival, Mr. Fox ran into Mr. Prothero, the real estate broker for Mount Olympus Realty, who informed Mr. Fox that Mr. Gardner was not in the office. Mr. Fox informed Mr. Prothero of the situation, namely, that if properties were to be exchanged there would not be any room for payment of a commission. Mr. Prothero responded by stating that Mr. Fox "had to do whatever he had to do to make the deal."

On May 25, 1976, as a result of these conversations, Mr. Fox and Mr. Dee executed an Earnest Money Receipt and Offer to Purchase Agreement which provided for the exchanging of Mr. Fox's property located in Sandy, Utah, for Mr. Dee's property located in Riverton, Utah. On July 9, 1976, one week after the listing had expired but within the listing period, Mr. Fox and Mr. Dee exchanged their respective properties. In August of 1976, Ms. Scott learned that Mr. Fox and Mr. Dee had exchanged properties. On September 21, 1976, over six months since the last contact between Ms. Scott and Mr. Fox or Mr. Dee, Ms. Scott sent a letter to Mr. Fox, and a copy to Mr. Dee. In that letter, Ms. Scott indicated for the first time that she felt that she was entitled to a commission. In an effort to resolve the dispute, Mr. Fox, Mr. Dee, Ms. Scott, Mr. White and Mr. Gardner held a meeting at a restaurant near the office of Parley White Realty, but were unable to reach an agreement.

On April 12, 1977, after failing to resolve the dispute, the respondents filed suit against Mr. Fox and Mr. Dee to collect the real estate commission allegedly due under the listing agreement. At trial, the parties stipulated that the respondents were entitled to a real estate commission under the terms of the listing agreement, unless they had waived their rights to that commission. After a jury trial, the jury returned a Special Verdict in which they specifically found that the respondents had waived their rights to a commission under the listing agreement. Both parties appeal that verdict.

On appeal, Mr. Fox argues that the trial court erred in failing to award him attorney's fees. On cross-appeal, the respondents advance several points of error, which raise the following issues: (1) Did the trial court err in denying the respondents' motion for a directed verdict on the grounds that the evidence was insufficient to allow the question of waiver to go to the jury? (2) Was the evidence insufficient to support a finding of waiver? (3) Did the trial court err in instructing the jury that the burden of proof regarding waiver is by a preponderance of the evidence rather than by clear and convincing evidence? (4) Did the trial court err in instructing the jury on the issue of waiver on the grounds that any modification or waiver of a contract that is within the statute of frauds must also comply with the statute of frauds? (5) Did the trial court err in instructing the jury that a real estate agent can waive the commission of his/her broker? We address these issues in the above order.

■ With respect to Mr. Fox's point of error regarding the trial court's failure to award him attorney's fees, this Court has espoused the principle that:

> Utah adheres to the well-established rule that attorney's fees generally cannot be recovered unless provided for by statute or by contract.

*Turtle Management, Inc. v. Haggis Management, Inc.,* Utah, 645 P.2d 667, 671

(1982) (citation omitted). *See also Devore v. Bostrom,* Utah, 632 P.2d 832 (1981); *Mecham v. Benson,* Utah, 590 P.2d 304 (1979). Mr. Fox has failed to cite, and our research has failed to reveal, any statutory provision which would permit the awarding of attorney's fees to Mr. Fox. With respect to contractual provisions, however, the listing agreement provides that:

> In case of the employment of an attorney to enforce any of the terms of this agreement, I [Mr. Fox] agree to pay a reasonable attorney's fee and all costs of collection.

This contract provides that only the real estate broker may recover attorney's fees in the event of default, but contains no similar provision in favor of Mr. Fox.

Mr. Fox urges this Court to adopt an exception to the above-quoted rule to provide for reciprocal application of one-sided attorney's fees provisions. In support of his argument, Mr. Fox cites a California and an Oregon statute. *See* Cal.Civ.Code § 1717 (West Supp.1983); Or.Rev.Stat. §§ 20.096 & 20.097 (1981). Utah, however, does not have a similar statute and we are not inclined to create one by judicial fiat. Mr. Fox also urges this Court to create an exception to the above-quoted rule pursuant to the doctrines of contract of adhesion and unconscionability. If in fact the present case did involve a contract of adhesion, the exception that Mr. Fox urges might merit consideration. However, this is not a case involving persons in unequal bargaining positions. Mr. Fox has been a real estate developer in the Salt Lake City area for approximately 25 years. During that time, he has dealt with numerous real estate brokers, including the respondents. By his own testimony, Mr. Fox has stated that, of the thousands of properties he has listed, he has frequently required that the broker modify the listing contract as a condition of obtaining the listing. Because the present case involves persons of relatively equal bargaining power and does not involve a flagrantly unjust provision or agreement, the doctrines regarding contracts of adhesion and unconscionability are inapplicable. *See, e.g., Bekins Bar V Ranch v. Huth,* Utah, 664 P.2d 455 (1983). *See generally,*

*e.g.,* J. Calamari & J. Perillo, *The Law of Contracts* § 1–3 at 6 & § 9–44 at 336–43 (2d ed. 1977). Thus, the trial court did not err in failing to award attorney's fees to Mr. Fox.

In their first issue, the respondents claim that the trial court erred in denying their motion for a directed verdict. With respect to directed verdicts, this Court has recently stated that:

> In directing a verdict the trial court may not weigh the evidence. Rather, the court must consider the evidence in the light most favorable to the party against whom the motion is directed and resolve controverted facts in his favor. If the evidence and its inferences would cause reasonable men to arrive at different conclusions as to whether the essential facts were or were not proved, then the question is one of fact for the jury.

*Cruz v. Montoya,* Utah, 660 P.2d 723, 728–29 (1983) (citations omitted). The applicable standard of review regarding a movant's challenge to a trial court's denial of a motion for a directed verdict is as follows:

> We test that challenge by viewing the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the party moved against, and will sustain the denial if reasonable minds could disagree with the ground asserted for directing a verdict.

*Cook Associates, Inc. v. Warnick,* Utah, 664 P.2d 1161, 1165 (1983) (citation omitted). The facts of the present case, regarding the statements of Ms. Scott and Mr. Prothero and the inaction by the respondents subsequent to those statements, would cause reasonable men to arrive at different conclusions as to whether Mr. Fox had provided sufficient evidence to sustain his defense of waiver. Our conclusion is further buttressed by the fact that the jury did in fact find that the respondents had waived their rights to a commission. Because the judge may not weigh the evidence, it was his duty to send the question of waiver to the jury. Thus, the trial court's denial of the respon-

dents' motion for a directed verdict was proper.

◼ The second issue raised by the respondents is whether the evidence is insufficient to support a finding of waiver. This Court has stated that:

The unaltered standard [of review] requires that a jury verdict not be upset unless the evidence clearly preponderates for the appellant to the extent that reasonable people could not differ on the outcome of the case.

*Time Commercial Financing Corp. v. Davis,* Utah, 657 P.2d 234, 236 (1982) (and cases cited therein). *See also, e.g., Williams v. State Farm Insurance Co.,* Utah, 656 P.2d 966 (1982). The trial court's denial of the respondents' motion for a directed verdict, and our sustaining of that decision, necessarily mandates the conclusion that the evidence is sufficient to support a jury's finding that the respondents waived their rights to a commission. Thus, the respondents' second point of error is without merit.

◼ The respondents' third contention, that the trial court erred in instructing the jury that the burden of proof regarding waiver is by a preponderance of the evidence rather than by clear and convincing evidence, is without merit. This Court has previously stated:

Plaintiff's argument that Asael must establish his title by proving his mother's "gift" by clear and convincing evidence, is misplaced, since *the factual issue in this case was* not proof of gift but *proof of waiver* or satisfaction of obligation by one who was already the title holder of record. *On that issue, proof by a preponderance of the evidence is sufficient.*

*Buttars v. Buttars,* Utah, 631 P.2d 892, 895 (1981) (citations omitted) (emphasis added).

◼ In their fourth issue, the respondents argue that the trial court erred in instructing the jury on waiver because any waiver of the listing agreement must comply with the statute of frauds. The respondents cite several cases in support of the general rule that any modification of a contract that is within the statute of frauds must also comply with the statute of frauds. *See, e.g., Zion's Properties, Inc. v.*

*Holt,* Utah, 538 P.2d 1319 (1975). However, with respect to oral modification of written contracts within the statute of frauds, this Court has stated:

If a party has changed his position by performing an oral modification so that it would be inequitable to permit the other party to found a claim upon the original agreement as unmodified or defeat the former's claim by setting up a defense that performance was not according to the written contract, after he has induced or consented to the former going forward, the modified agreement should be held valid.

*Bamberger Co. v. Certified Productions, Inc.,* 88 Utah 194, 201, 48 P.2d 489, 492 (1935), *aff'd on rehearing,* 88 Utah 213, 53 P.2d 1153 (1936). In the present case, Mr. Fox exchanged properties with Mr. Dee *only* after the respondents had orally waived their rights to a commission. Mr. Fox testified that he would not have exchanged properties with Mr. Dee without the waiver of the commission because the exchange did not generate any cash with which he could pay any commission. To now allow the respondents to repudiate their oral modification of the listing agreement and to claim a right to a commission under that agreement as unmodified would clearly be inequitable. Thus, under the exception to the general rule as enunciated in the *Bamberger Co.* case, we hold that the trial court did not err in instructing the jury on waiver.

◼ With respect to the final issue, Parley White Realty claims that the trial court erred in instructing the jury that a real estate agent can waive the commission of his/her broker. The relationship between a real estate broker and its agents is that of employer and employee. *See Phillips v. JCM Development Corp.,* Utah, 666 P.2d 876 (1983). Despite this relationship, Parley White Realty contends that Ms. Scott was without authority to waive its commission. Parley White Realty relies on the general rule of agency law that power to execute a contract or agreement does not necessarily vest authority in the agent to vary the agreement after it is executed or

**1302**

to waive any of its terms or conditions. *See Restatement (Second) of Agency* § 51 comment c. (1958); 3 Am.Jur.2d *Agency* § 85 (1962). We do not dispute this rule. However, like most general rules, this rule is also subject to exceptions.

 In Utah, real estate agents are vested with very broad powers. Our statutes provide that, subject to certain limitations, real estate agents are empowered to perform all acts or transactions that their real estate broker may perform. *See* U.C.A., 1953, § 61–2–3. It is indisputable that a real estate broker may waive its own commission or agree to rescind a listing agreement. It therefore follows that, under our statutory scheme, a real estate agent may also waive his/her own commission as well as that of his/her broker. This Court has previously stated:

> It is not at all uncommon for the principal to put an agent in a position in which the making of statements or representations or the giving of information is the act expressly contemplated and directed. Thus if the principal refers a person to his agent for information, the agent is clearly authorized to give information for the principal upon the subject indicated. If the principal carrying on an extensive business establishes a bureau of information, or designates an agent to whom inquiries may be referred or of whom information may be obtained, the giving of such information or the answering of such inquiries is an act which the principal has directly authorized.
>
> The giving of information or the answering of inquiries in such a case must, of course, be confined to the subjects which have actually or apparently been confided to him to answer for; but within that sphere persons expressly or impliedly referred to him, who act in good faith and with reasonable prudence may rely upon the information as information given by the principal.

*Wasatch Chemical Co. v. Leon,* 123 Utah 296, 299, 259 P.2d 301, 302 (1953) (quoting 2 Mechem on Agencies, 2d ed., § 1778). *See also Bowen v. Olsen,* Utah, 576 P.2d 862 (1978). Thus, we hold that the trial court

did not err in instructing the jury that a real estate agent can waive the commission of its broker.

Affirmed. No costs awarded.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.