The George **FISHER**, Jr., Family Inter Vivos Revocable Trust; LaRue Fisher, individually; LaRue Fisher, Settlor and Trustee of the George Fisher, Jr., Family Inter Vivos Revocable Trust Agreement; and Brent Elmer Fisher, Co-Trustee of the George Fisher, Jr., Family Inter Vivos Revocable Trust Agreement, Plaintiffs, Appellants, and Cross-Appellees,

v.

Max George **FISHER** and Joyce Fisher, Defendants, Appellees, and Cross-Appellants.

No. 950089–CA.

Court of Appeals of Utah.

Nov. 16, 1995.

---

**4.** These are the letters of January 5, 1978, and November 23, 1983.

Lon Rodney Kump and Richard L. Bird, Jr., Salt Lake City, for Appellants.

Lohra L. Miller, West Jordan, for Appellees.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

This case involves an appeal and cross-appeal from the trial court's judgment and order, directing appellees Max and Joyce Fisher to commence payment on a note and escrow agreement they entered into with George and LaRue Fisher (the Fishers) in May 1974.[1] On appeal, appellant the Fisher Family Trust (the Trust)[2] contends the trial court erred when it (1) determined George Fisher, now deceased, entered into an oral agreement with his son, Max Fisher, postponing payments due under the escrow agreement; (2) determined LaRue Fisher was bound by these oral representations; (3) allowed appellees credit for a 1979 cattle sale as a payment under the escrow agreement; (4) determined the forfeiture remedy sought by the Trust was inequitable; and (5) refused to award the Trust its attorney fees.

In their cross-appeal, appellees contend the trial court erred when it (1) found the parties orally modified the escrow agreement; (2) refused to apply the statute of limitations to preclude the Trust's collection of the majority of the annual installments due under the agreement; (3) refused to apply the equitable doctrines of waiver, estoppel, and laches to the instant action; and (4) concluded interest continued to accrue under the oral modification. Finally, appellees urge this court to grant attorney fees on appeal.

We affirm the trial court's decision.

## I. FACTS

We recite the facts as found by the trial court as they have not been successfully challenged on appeal. *See Jolivet v. Cook,* 784 P.2d 1148, 1150 (Utah 1989), *cert. denied,* 493 U.S. 1033, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990).

On or about May 1, 1974, the Fishers conveyed approximately 600 acres (the property) to appellees, pursuant to a written escrow agreement. The purchase price of the property was $124,000 plus five percent interest. At closing, appellees were credited with a down payment in the amount of $8,280. The agreement thereafter called for $10,000 installment payments beginning May

---

1. This case involves a family dispute over a plot of land that parents sold to their son and daughter-in-law. While the parties will be referred to in neutral terms, it is important to note the family relationships. George and LaRue Fisher are the parents of Max Fisher, and Joyce Fisher is Max's wife. The Trust beneficiaries include LaRue Fisher, Max Fisher, and Max's siblings.

    Because this case involves a family dispute and numerous equitable issues, reaching a fair result under governing principles of law was a difficult task. We believe this is precisely the type of case where Alternative Dispute Resolution would have been appropriate. *See* Utah Code Ann. § 78–31b–1 to –9 (Supp.1995).

2. Sometime prior to the litigation in this matter but after the purported oral modification, the Fishers transferred by quitclaim deed their interest in the property to the Trust. Therefore, the Trust is the moving party in this action.

1, 1975, and due annually on May 1, until paid in full. Under this payment schedule, the final payment of $7,170.43 would be due May 1, 1992. Appellees took possession of the property on May 1, 1974 and have remained in possession since that date.

During the term of the escrow agreement, the parties had several conversations regarding the annual payments. The first conversation occurred on the property in the spring of 1975 between Max and George Fisher. At this time, Max inquired about the May 1, 1975 payment and George told him that he should not make the payment; rather, he should invest the money in the property. George indicated he did not need the money at that time and that if Max paid him, the money would only go to taxes. George also said he would notify Max when he should begin making payments.

The parties again discussed annual payments in 1979. At this meeting, Max, Joyce, and George Fisher were present. Appellees had recently completed two cattle sales, totaling $82,980. Appellees wished to give this money to George in partial satisfaction of the escrow agreement. George initially refused the entire sum, responding that he did not need the money nor did he want the money due to the tax consequences. George again instructed appellees to reinvest the money into the property. Max, however, insisted George accept at least a portion of the proceeds. George assented and accepted $24,-980 as partial payment on the property.

The final conversation regarding the payments occurred in 1988 or 1989 when appellees discovered the home on the property was irreparably damaged and would need to be torn down and replaced. Max contacted his parents and asked them to come out to the property to inspect the house. Max informed his father that he would either have to tear down and rebuild the old home or purchase another home on some adjoining property located approximately two miles away. George responded that in order to make a farm work, Max needed to live on the property and instructed him to build the new home. When Max informed George that he could not both build a new home and pay George the annual installments on the prop-erty, George directed Max to build the home and not to worry about the payments. Appellees thereafter built a new home which they financed by pledging their cattle and farm equipment as security.

Since 1974, appellees have substantially improved the property. They installed sprinkling systems, cleared and graded the land, installed a system of ponds, built a home and other buildings, and made numerous other improvements. Also, from May 1974 to George Fisher's death in April 1992, neither George nor LaRue Fisher demanded payment or attempted to enforce the escrow agreement.

On March 5, 1993, because the Trust had not received any payments under the written escrow agreement, the Trust sent appellees a Notice of Termination of the Agreement and thereafter filed suit.

A one-day bench trial was held. The trial court refused to grant the Trust relief on its notice of termination, finding that appellees were not in default when the notice was sent. The trial court found the parties had orally modified the escrow agreement, tolling payment of the annual installments until a specific demand for payment was made. The court reasoned that when the demand for payment was sent in March 1993, the May 1, 1993 payment was not yet due and appellees were therefore not in default when the notice was served. Accordingly, the trial court ordered appellees to commence paying the annual installments on the contract in May 1993 plus interest accruing from the date of the original agreement. The trial court denied appellees' statute of limitations, waiver, laches, and estoppel claims, reasoning that because payment was not requested until March 1993, under the modified contract, there were no outstanding payments nor undue delay. The court rejected the Trust's claim that LaRue Fisher was not bound by the terms of the oral modification. Rather, the court found LaRue Fisher knew of the modification and acquiesced in the agreement to postpone payments. Further, the court ruled that even if appellees were in default, the forfeiture remedy requested by the Trust was inequitable and therefore not enforceable. Finally, the court held the agreement

did not provide for payment of attorney fees to either party as neither was in default. Both parties appeal.

## II. THE ORAL MODIFICATION OF THE ESCROW AGREEMENT

On appeal, both parties assail the trial court's determination on the oral modification. First, they contend that neither party pleaded or sought to prove an oral modification. Alternatively, appellees directly challenge the modification, contending it violates the statute of frauds. Moreover, appellees argue that if this court finds the parties did, in fact, orally modify the original agreement, there was no meeting of the minds regarding the essential terms of the modified agreement and that it is therefore too incomplete and indefinite to be enforced. The Trust, on the other hand, does not claim that the parties did not orally modify the written escrow agreement, but contends the trial court misconstrued the proper scope and terms of that modification. Additionally, the Trust contends the trial court erred in finding LaRue Fisher was bound by the terms of the modified contract.

### A. Sua Sponte Consideration of Oral Modification of the Escrow Agreement

■ Both parties contend the trial court erred when it sua sponte determined the parties orally modified the written escrow agreement. Rule 15(b) of the Utah Rules of Civil Procedure provides that issues not raised by the pleadings may be tried by the express or implied consent of the parties.[3] "If a theory of recovery is fully tried by the parties, the court may base its decision on that theory and deem the pleadings amended, even if the theory was not originally pleaded or set forth in the pleadings." *Colman v. Colman*, 743 P.2d 782, 785 (Utah App.1987). However, that the issue has been

3. Rule 15(b) provides, in part:
   When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.
   Utah R.Civ.P. 15(b).

4. That statute provides:

tried by the express or implied consent of the parties must be evident from the record. *Id.*

Having reviewed the record, we find the parties clearly focused on the oral representations and their likely effect on the original escrow agreement at trial. We therefore conclude that pursuant to Rule 15(b) the issue of oral modification was tried by implication.

### B. Statute of Frauds

■ Appellees next contend the trial court erred when it found the oral modification did not violate the statute of frauds. They claim that because the original escrow agreement was in writing and dealt with real property, the parties could not thereafter orally modify that agreement.

■ The general rule is that "any modification of a contract that is within the statute of frauds must also comply with the statute of frauds." *White v. Fox*, 665 P.2d 1297, 1301 (Utah 1983). "[W]hen a contract is required to be in writing, the same requirement applies with equal force to any alteration or modification thereof." *Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975); *accord SCM Land Co. v. Watkins & Faber*, 732 P.2d 105, 108 (Utah 1986). Under the Utah Statute of Frauds, the original escrow agreement was required to be in writing. *See* Utah Code Ann. § 25-5-3 (1995).[4] Thus, at first blush, the oral modification seems to violate the statute of frauds.

■ However, a recognized and accepted exception to the statute of frauds provides, " '[i]f a party has changed his position by performing an oral modification so that it would be inequitable to permit the other party to found a claim upon the original agreement[,] ... the modified agreement should be held valid.' " *White*, 665 P.2d at 1301 (quoting *Bamberger Co. v. Certified Prods., Inc.*, 88 Utah 194, 201, 48 P.2d 489,

> Every contract for ... the sale [ ] of any lands ... shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the ... sale is to be made....
> Utah Code Ann. § 25-5-3 (1995).

492 (1935), *aff'd on reh'g,* 88 Utah 213, 53 P.2d 1153 (1936)); *accord Allen v. Kingdon,* 723 P.2d 394, 396 (Utah 1986). Thus, where there is evidence of part performance under the modified agreement, and where it would be inequitable to permit a party to repudiate the oral modification and seek enforcement of the written contract, the oral agreement may be removed from the statute of frauds and enforced. *White,* 665 P.2d at 1301.

In the instant case, the trial court found, and the record supports, that the parties agreed to delay payments under the escrow agreement. The court concluded these conversations formed the basis of an oral modification which appellees relied upon and performed in part. The trial court stated:

> 23. ... The modification came after [appellees] had entered into possession and began to perform under the contract. The modification was limited to the timing of payments only. It did not change the amount due. The contract was partially performed, and [appellees] relied upon the oral representations. The improvements were substantial and valuable. The decision to invest in the property rather than make payments was exclusively referable to the oral modification. The Court believes that [appellees] changed positions by performing on the oral modification so that it would now be inequitable to permit [the Trust] to found their claim for breach on the original agreement as unmodified.

The trial court further found appellees installed sprinkling systems, built numerous structures and outbuildings, built and improved a systems of ponds, graded and cleared the land, and constructed a new dwelling on the property in reliance on this oral agreement. Thus, in reliance on the oral modification, appellees changed their position and partially performed the contract. Further, the trial court found it would be inequitable to permit the Trust to enforce the unmodified agreement. Accordingly, we find the trial court correctly determined the oral modification did not violate the statute of frauds.

## C. Meeting of the Minds

▉ Appellees alternatively contend that the modification must nevertheless fail because there was no meeting of the minds between the parties regarding all of the essential terms of the modified agreement. We disagree. The parties chose to modify one narrow, but essential, term of the written contract, which modification the parties clearly relied upon.

▉ It is settled that " 'the parties to a contract' " may modify " '*all or any portion* of that contract.' " *Western Sur. Co. v. Murphy,* 754 P.2d 1237, 1239 (Utah App.1988) (emphasis added) (quoting *Rapp v. Mountain States Tel. & Tel. Co.,* 606 P.2d 1189, 1191 (Utah 1980)). Moreover, a condition precedent to enforcement of a modified contract "is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness." *Pingree v. Continental Group of Utah, Inc.,* 558 P.2d 1317, 1321 (Utah 1976) (citation omitted); *Southland Corp. v. Potter,* 760 P.2d 320, 322 (Utah App.1988).

▉ In the instant case, the trial court found, and we agree, that the parties narrowly modified the original escrow agreement. Namely, the parties orally agreed that the annual payments under the escrow agreement would not be due until requested. This finding is clearly supported by the record.[5] The remaining terms of the parties' agreement—how payment after demand was to be made and the accrual of interest—remained governed by the original written escrow agreement.

Because the parties clearly agreed that annual payments would be delayed until demanded, the limited oral modification is enforceable and the trial court correctly determined that the escrow agreement had not been breached when the notice of termination was filed. Rather, the notice of termination served as the first demand for payment under the modified agreement and therefore preceded any breach of the escrow

5. In reaching this conclusion, we note that just as a partial modification of a written contract that is likewise in writing is enforceable, so is an oral modification that the parties clearly relied upon and that one party performed in part.

agreement. Thus, the trial court did not err when it found that appellees were not in default on March 5, 1993.

Moreover, accepting the oral modification and enforcing the remaining terms of the original escrow agreement, we conclude the trial court correctly determined that the amount owing at the time of demand included the outstanding principal plus five percent interest, and properly reinstated the annual $10,000 installment payments beginning May 1, 1993.

### D. Is LaRue Fisher Bound?

■ The Trust claims the trial court erred when it found LaRue Fisher was bound by the terms of the oral modification because she knew about the agreement and acquiesced in it. To successfully challenge the trial court's finding, the Trust must demonstrate that finding is clearly erroneous. To make such a showing, the Trust must marshall all of the evidence supporting the finding and then demonstrate how this evidence, when viewed in the light most favorable to the finding, is insufficient to support it. *Consolidation Coal Co. v. Division of State Lands & Forestry*, 886 P.2d 514, 519 (Utah 1994); *Campbell v. Campbell*, 896 P.2d 635, 638 (Utah App.1995).

The Trust fails to meet this burden. Rather than marshall the evidence, the Trust merely highlights a portion of the trial court's findings and then argues that there was other, contrary evidence before the trial court. Specifically, the Trust argues that, prior to George Fisher's death, LaRue Fisher made two express demands for payment, and that two family friends testified that LaRue Fisher did not agree with her husband regarding the delayed payments. Because the Trust has failed to properly marshal the evidence, we affirm the trial court's determination that LaRue Fisher is bound by the terms of the narrow oral modification.

### E. The 1979 Cattle Sale

■ Next, the Trust contends that appellees made no payments on the escrow agreement other than the original down payment and that the trial court erred when it granted them credit for the proceeds of a 1979 cattle sale.

At trial, the court received testimony from both Max and LaRue Fisher regarding the cattle sale. After weighing this testimony, the trial court found:

21. ... The evidence of this sale of cattle is conflicting.... As between the two parties, the recollection of LaRue is not as good as Max's. LaRue simply was not involved in the daily operations of the dairy and did not have a clear recollection concerning these issues. Based upon all the evidence, the court[ ] finds that the cattle which were sold in 1979 were owned by Max and Joyce, therefore, the amount due under the contract should be reduced the amount of $24,980.

In making this finding, the trial court found Max's testimony to be more credible.

■ The trial court is in the best position to weigh conflicting testimony, to assess credibility, and from this, to make findings of fact. *Beesley v. Harris*, 883 P.2d 1343, 1349 (Utah 1994). This court "does not lightly disturb the ... factual findings of a trial court." *Id.* Accordingly, absent a proper showing that the trial court erred, we will not revisit the facts on appeal. We therefore accept the trial court's finding crediting appellees with the $24,980 payment made in 1979.

### III. ATTORNEY FEES

■ Finally, both parties urge this court to grant attorney fees. "Utah adheres to the well-established rule that attorney's fees generally cannot be recovered unless provided for by statute or by contract." *White v. Fox*, 665 P.2d 1297, 1299 (Utah 1983) (quoting *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982)). In relevant part, the escrow agreement provides, with our emphasis:

It is herein mutually understood and agreed by and between the parties hereto, that if either party shall fail or neglect to perform any of the covenants and stipulations herein contained to be performed on his part, and if any suit or action is brought to enforce any of the covenants herein contained, *the defaulting party* shall pay all costs and expenses of such action, *including a reasonable attorney's fee.*

Because we hold the oral modification is enforceable, we find that appellees were not in default when the notice of termination was filed in March 1993, as payment was not due until May 1st. Therefore, although the Trust initiated the instant action in an effort to enforce the written escrow agreement, under the terms of the modified agreement there was no defaulting party. Thus the Trust is not entitled to its attorney fees. Again, under the terms of the escrow agreement, appellees are likewise not entitled to their attorney fees on appeal.[6]

## IV. CONCLUSION

The trial court correctly determined the parties narrowly modified the original written escrow agreement. The parties mutually agreed that the annual installment payments would not be due until a specific demand for payment was made. Accordingly, we hold the trial court correctly determined that when the Trust filed its notice of termination and request for forfeiture, appellees were not in default under the modified contract and therefore appropriately denied the Trust's requested relief. Additionally, we accept the trial court's findings that LaRue Fisher is bound by the oral modification because she knew of the agreement and acquiesced in it, and that appellees are entitled to a credit for the proceeds of the 1979 cattle sale. We likewise conclude that because neither party was in default when the instant action was filed, neither party is entitled to attorney fees.

WE CONCUR.

GREENWOOD and JACKSON, JJ. concur.

---

**6.** Under our holding today, we conclude the parties orally agreed that payment was not due until demanded, and therefore find the Trust's notice of termination was premature and that the forfeiture remedy under the written contract does not apply until there is a default in payments as provided for by the modification. Similarly, because we conclude the parties narrowly modified the escrow agreement, there were no outstanding installment payments owing at the time the instant action was filed and therefore the statute of limitations does not bar the Trust's recovery in this case. Finally, we hold the equitable doctrines of waiver, estoppel, and laches are inapplicable to bar the remaining amount owing under the agreement. We therefore decline to address further the merits of these claims on appeal. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (stating appellate courts "need not analyze and address in writing each and every argument, issue, or claim raised").